2008-NMCA-161

197 P.3d 1085

**David J. MEDINA, Plaintiff–Appellant,**

v.

**Ray A. HOLGUIN, and WMA Securities, Inc., Defendants–Appellees.**

No. 27,314.

Court of Appeals of New Mexico.

Oct. 31, 2008.

Martin, Lutz, Roggow, Hosford & Eubanks, P.C., William L. Lutz, Las Cruces, NM, for Appellant.

Yarbro & Associates, P.A., Roger E. Yarbro, Cloudcroft, NM, for Appellee Ray A. Holguin.

Windle, Hood, Alley, Norton, Brittain & Jay, LLP, Eric Brittain, El Paso, TX, for Appellee WMA Securities, Inc.

## OPINION

KENNEDY, Judge.

{1} Plaintiff David Medina (Medina) appeals from an order of the district court granting a motion filed by Defendants Ray Holguin (Holguin) and WMA Securities, Inc. (WMAS) to compel arbitration. At issue in this appeal is the applicability of an arbitration provision in the rules of the National Association of Securities Dealers (NASD). The parties do not dispute their respective roles under this provision. *See* NASD Rule 10301(a) (effective through April 16, 2007), *available at* http://finra.complinet.com/en/display/display_viewall.html?rbid=2403 & element—id=6014 & record_id=8050. On appeal, Medina argues that because the NASD memberships of both Holguin and WMAS had terminated by the time of his suit, neither may enforce the arbitration agreement against him. We agree and hold that Defendants fail to meet the requirements of Rule 10301(a). We can locate no language in the rule to indicate that an associated person enjoys any rights independent from those of its parent member. We therefore hold that such an associated person may not compel arbitration with a customer after the lapse of the member's NASD membership. We reverse and remand to the district court for proceedings in accordance with this opinion.

## BACKGROUND

{2} Medina suffered an injury that caused damage to his brain. He received a monetary settlement for his injury, which he invested to provide himself a safe, reliable income. Holguin acted as Medina's tax preparer and, as such, was intimate with Medina's financial circumstances. Holguin also worked as a representative for the investment firm, WMAS. He sought to have Medina invest his settlement money with WMAS and allegedly promised Medina that the move would produce substantially more income. Medina consented and moved his money to an account established by Holguin with WMAS. Medina asserts that he subsequently lost a substantial sum.

{3} Upon transferring his account, Medina signed an agreement with WMAS in October 1999 that contained an arbitration clause. The agreement provided that any controversy arising during the conduct of business between Medina and WMAS or its employees would be submitted to arbitration "in accordance with the rules then in effect of [NASD]." The agreement further stated that "[s]uch arbitration shall follow the procedures as set forth by a national arbitration committee of the NASD." Holguin, who was employed by WMAS, did not sign this agreement.

{4} WMAS no longer enjoyed NASD membership by 2002. As a consequence, NASD suspended Holguin's membership as an associated person of WMAS, and though he was eligible to do so, Holguin did not renew his license until joining another firm after the initiation of this litigation.

{5} Medina applied to NASD for arbitration in 2005, asserting his claims against WMAS and Holguin. NASD responded by informing Medina that nonmembers of NASD are not automatically subject to arbitration. The organization stated that neither WMAS nor Holguin was a current member and that WMAS, as a nonmember, could not invoke the arbitration clause against Medina. NASD explained that "[t]he exemption from required arbitration in Rule 10301(a) does not apply to claims against associated persons, regardless of their registration status[,]" and that NASD "has limited disciplinary authority over former associated persons." Medina afterwards filed his complaint in district court, claiming breach of fiduciary duty, negligence, fraud, and negligent misrepresentation.

{6} Because its NASD membership had lapsed by the time of Medina's lawsuit, WMAS concedes that it has no independent right to compel arbitration in this matter. Holguin echoes the argument of WMAS and has provided additional information pertaining to his membership. He seeks enforcement of the arbitration agreement under Rule 10301(a) because of his claimed right to compel arbitration because of his status as an associated person of WMAS. Holguin filed an affidavit stating that he was a member at all material times pertaining to Medina's lawsuit, an assertion in conflict with information

furnished by NASD. He argues that despite the suspension of his membership as a result of WMAS's membership lapse in 2002, he remained eligible to re-apply during a two-year time period without re-testing. He claims that such eligibility rendered his suspended membership valid "for a period of two years." After the filing of Medina's claim, Holguin's membership was reinstated when he became an associated person with a different securities firm. Ultimately, the district court granted the motion to compel arbitration, and Medina appeals from that order.

## DISCUSSION

{7} We review an order to compel arbitration de novo when it appears that the district court determined as a matter of law that an agreement to arbitrate existed, in the same fashion as we review orders for summary judgment. *DeArmond v. Halliburton Energy Servs., Inc.,* 2003–NMCA–148, ¶ 4, 134 N.M. 630, 81 P.3d 573. An arbitration agreement entered pursuant to the NASD Code of Arbitration Procedure is likewise reviewed de novo. *See MONY Sec. Corp. v. Bornstein,* 390 F.3d 1340, 1342 (11th Cir. 2004). The Federal Arbitration Act provides that a written agreement to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2006).

{8} As contracts, "[w]e consider [arbitration agreements] as a whole to determine how they should be interpreted." *Campbell v. Millennium Ventures, LLC,* 2002–NMCA–101, ¶¶ 1, 15, 132 N.M. 733, 55 P.3d 429. "When discerning the purpose, meaning, and intent of the parties to a contract, the court's duty is confined to interpreting the contract that the parties made for themselves[.]" *Ponder v. State Farm Mut. Auto. Ins. Co.,* 2000–NMSC–033, ¶ 11, 129 N.M. 698, 12 P.3d 960 (internal quotation marks and citation omitted).

{9} Medina's arbitration agreement with WMAS incorporates the NASD Rules and provides that they control all arbitration between the parties. We therefore view the NASD rules concerning the arbitration agreement through the lens of New Mexico law. *See Fiser v. Dell Computer Corp.,* 2007–NMCA–087, ¶ 5, 142 N.M. 331, 165 P.3d 328, *rev'd on other grounds,* 2008–NMSC–046, ¶ 25, 144 N.M. 464, 188 P.3d 1215; *DeArmond,* 2003–NMCA–148, ¶ 9, 134 N.M. 630, 81 P.3d 573. We interpret the NASD Code as we would a contract under New Mexico law. *See MONY Sec. Corp.,* 390 F.3d at 1342.

{10} Rule 10301(a) defines the parties that may pursue arbitration and provides the conditions upon which arbitration may be sought as follows:

> Any dispute, claim, or controversy . . . between a customer and a member and/or associated person arising in connection with the business of such member or in connection with the activities of such associated persons shall be arbitrated under this Code, as provided by any duly executed and enforceable written agreement or upon the demand of the customer. A claim involving a member in the following categories shall be ineligible for submission to arbitration under the Code unless the customer agrees in writing to arbitrate the claim after it has arisen:
>
> 1. A member whose membership is terminated, suspended, canceled, or revoked[.]

{11} Both WMAS and Holguin argue that Holguin may enforce the arbitration agreement as an associated person. But a close reading of Rule 10301(a) and NASD's interpretations of that rule reveals the inadequacy of this contention. Rule 10301(a) sets two conditions for arbitration. First, the dispute must occur between a customer and an NASD member or an associated person of an NASD member. In this respect, the dispute must have arisen in connection with the business of the member or in connection with the activities of the associated person. *Id.; O.N. Equity Sales Co. v. Gibson,* 553 F.Supp.2d 652, 656 (S.D.W.Va.2008); *see Multi–Fin. Sec. Corp. v. King,* 386 F.3d 1364, 1370 (11th Cir.2004) (concluding that because a customer dealt with a representative of a member, Rule 10301(a) was satisfied); *Wash. Square Sec., Inc. v. Sowers,* 218 F.Supp.2d 1108, 1117 (D.Minn.2002) (holding that a cus-

tomer who deals with an associated person also deals with the member). Second, a claim may not be submitted to arbitration when it involves a member whose membership is no longer valid. Rule 10301(a)(1). Such claims may be submitted to arbitration only if the customer agrees in writing. *Id.*

{12} No party disputes that Medina signed a contract requiring him to arbitrate any claim arising out of transactions with WMAS or Holguin, in accordance with NASD rules. Indeed, the parties concede that Medina's claims involved both an NASD member (WMAS) and an associated person (Holguin). Medina's agreement to abide by NASD rules constitutes an agreement to arbitrate. *See MONY Sec. Corp.*, 390 F.3d at 1342 (holding that the NASD Code itself constituted an agreement to arbitrate). Because of its status as a nonmember, WMAS concedes that it is not entitled to enforce arbitration but attempts to bootstrap its arbitration right from Holguin's asserted status. We turn now to defining the contours of Holguin's rights to enforce arbitration as a nonmember associated person under Rule 10301(a).

{13} The language of Rule 10301(a) provides no clear answer to whether its exception applies equally to both NASD members and their associated persons. The rule provides for arbitration between a customer and an active "member and/or associated person." Rule 10301(a). The rule's exception provisions state specific exceptions to "claim[s] *involving* . . . member[s]." *Id.* (emphasis added). Despite the rule's apparent vagueness, it is clear to this Court that an associated person obtains status under Rule 10301(a) only through employment by (as in this case) or association with a member. Thus, when the member's status under NASD ends, so does the status of the associated person. This is clear to us when we consider the language in NASD Rule 1031(c) (March 3, 2003), *available at* http://fnr a.complinet.com/en/display/display.html?rbid=2403 & record_id=4260 & element_id=3584 & highlight=1031# r4260, that allows a grace period for reinstatement. Without a lapse in the associated person's membership, there would be no need for reinstatement. Subsequent reinstatement depends on association with a current NASD member. From this we conclude that when the status of WMAS changed to that of nonmember, so did Holguin's under NASD rules.

{14} The language of Rule 10301(a) allows at least three interpretations. First, the rule's exception may be read to include employees of members when the dispute "involves" a member whose membership has been revoked. Because the instant dispute arose from events occurring during WMAS's membership, which ended in 2002, and Holguin's employment by WMAS, which began on May 17, 2001, this interpretation would disallow Holguin from asserting the arbitration clause, thus supporting Medina's argument. A second interpretation would also support Medina's argument. Based on the statutory canon of construction, *noscitur a sociis*, a court must look to the neighboring words in a statute to construe contextual meaning. *In re Gabriel M.*, 2002–NMCA–047, ¶ 19, 132 N.M. 124, 45 P.3d 64. Under this reading, the term "member" in the exception would be read to include "associated person" from the preceding section. Once so included, the associated person is likewise covered by the exception. However, a third interpretation would read the exception as inapplicable to associated persons and would also allow associated persons to invoke arbitration agreements "regardless of their [NASD] registration status." Both Holguin and WMAS urge us to adopt this third interpretation.

{15} An examination of the purpose behind Rule 10301(a) resolves this conflict and leaves little doubt as to the rule's proper construction. The right to arbitration under Rule 10301(a) belongs primarily to the customer. *See Multi–Fin. Sec. Corp.*, 386 F.3d at 1369–70. As such, the exception provision of Rule 10301(a) was written to protect the customer, and NASD has been explicit in its espousal of this concept. 66 Fed.Reg. 13362–01 (Mar. 5, 2001). Providing its rationale for proposing the exception provision for Rule 10301(a), NASD stated:

NASD Dispute Resolution believes that the proposed rule change is consistent with the provisions of Section 15A(b)(6) of the

[Securities and Exchange Act of 1934] which requires, among other things, that the Association's rules must be designed to prevent fraudulent and manipulative acts and practices, to promote just and equitable principles of trade, and, in general, *to protect investors and the public interest. Because terminated, suspended, barred or otherwise defunct firms have a significantly higher incidence of non-payment of arbitration awards than do active firms, NASD Dispute Resolution believes that the proposed rule change will protect investors and the general public by giving customers greater flexibility to seek remedies against such firms.*

66 Fed.Reg. 13362–01 (emphasis added) (footnote omitted). The text itself of Rule 10301(a) also conveys the purpose of customer protection. As the rule's exception states, members with invalid memberships may not compel arbitration. In its January 12, 2006, letter suggesting that Medina may pursue a remedy in court, NASD explained that in the arbitration forum its coercive power over nonmembers for the benefit of customers is limited. Nevertheless, customers may choose to arbitrate as long as their choice is in writing. Such language reflects the intentions of the drafters to place customer protection before the interests of members and their associated persons. It also ensures the customer's affirmative choice of what NASD views as a weakened option owing to nonmember status.

{16} Allowing associated persons to enforce arbitration agreements in the way sought by Holguin frustrates this purpose. Of the privileges NASD members enjoy, one of the most valuable is the protection afforded by mandatory arbitration clauses and the forum in which to pursue them. Upon termination of a membership, NASD Rules cease to apply to the former member. It follows, then, that an associated person, being dependent for its status on and derivative of the member's, should likewise lose NASD privileges upon termination of the qualifying membership. It makes little sense to prohibit nonmember firms from enforcing arbitration while the associated persons of such firms remain free to do so. We reject this interpretation.

{17} Defendants contend that the exception in Rule 10301(a) applies only to NASD members and that associated persons have independent rights to compel arbitration. They claim that membership status, that of either WMAS or Holguin, has no bearing on Holguin's right to compel arbitration. The arbitration exception of Rule 10301(a), they argue, does not apply to Holguin as an associated person. By its own terms, advocate Defendants, the rule exempts only "members" from arbitration when their memberships become invalid. As shown above, this argument is unpersuasive. The status of an associated person is inextricably dependent on the status of its parent member. *See O.N. Equity Sales Co. v. Rahner,* 526 F.Supp.2d 1195, 1201 (D.Colo.2007). Indeed, it is the member's registration that defines the status of the associated person. *See Miller v. Flume,* 139 F.3d 1130, 1135 (7th Cir.1998) (interpreting the 1997 NASD by-laws). Necessarily, any privileges enjoyed by the associated person must flow from that person's relationship with the member. A privilege held by an associated person, by its nature, cannot exist independently of the member. For purposes of construing a rule, NASD prescribes that

> [u]nless the context otherwise requires, or unless otherwise defined in these Rules, terms used in the Rules and interpretive material, if defined in the NASD By–Laws, shall have the meaning as defined in the NASD By–Laws.

NASD Rule 0121 (effective August 7, 1997), *available at* http://finra.complinet.com/en/display/display_main.html?rbid=2403 & element_id=3558. Lacking a definition either within Rule 10301(a) or elsewhere in the NASD Rules, we are therefore directed to the definition of "associated person" in the NASD By–Laws:

> [A] "person associated with a member" or "associated person of a member" means … (2) a sole proprietor, partner, officer, director, or branch manager of a member, or … other natural person occupying a similar status or performing similar functions, or a natural person engaged in the investment banking or securities business

who is directly or indirectly controlling or controlled by a member, whether or not any such person is registered or exempt from registration with the NASD under these By–Laws or the Rules of the [NASD].

NASD Notice to Members 99–95, at 714 (November 1999) (emphasis omitted), *available at* h ttp://www.finra.org/web/group s/industry/@ip/@reg/@notice/documents/notices/ p004048.pdf. We hold that under this NASD definition, the status of "associated person" is prescribed by a member's control of the person who functions on behalf of that NASD member. Holguin therefore ceased to be an associated person in 2002 when the membership of WMAS terminated because he no longer functioned on behalf of a member and was no longer "controlled by a member."

{18} Holguin and WMAS rely on an interpretation of Rule 10301(a) propagated by NASD. When the Securities and Exchange Commission approved the exception provision for Rule 10301(a) that became effective in June 2001, NASD issued a notice to its members that provided the following interpretation of Rule 10301(a):

> [T]he rule does not apply to claims against associated persons [and] such claims remain eligible for arbitration pursuant to Rule 10301(a). However, before serving a customer claim against an associated person, NASD Dispute Resolution will inform the customer if the associated person's registration is terminated, revoked, or suspended.

NASD Notice to Members 01–29, at 278 (May 2001), *available at* http://www.finra.org/web/gro ups/industry/@ip/@reg/@notice/documents/notices/ p003875.pdf. NASD echoed this position in its letter to Medina, dated January 12, 2006. The agency stated that "[t]he exemption from ... arbitration ... does not apply to claims against associated persons, regardless of their registration status." Defendants' reliance on this interpretation—to the extent that such "does not apply" language might be read to indicate a greater right accorded to an associated person than to a member—is equally unpersuasive. Associated persons have no status

apart from that of their qualifying member. As noted above, the stated purpose of Rule 10301(a) is customer protection. *See Phelps Dodge Tyrone, Inc. v. N.M. Water Quality Control Comm'n,* 2006 NMCA–115, ¶ 25, 140 N.M. 464, 143 P.3d 502 ("[W]e give deference to an agency's interpretation of its own regulations."). The NASD interpretations cited by Holguin and WMAS, if followed, would fail to achieve this purpose. They would allow nonmember associated persons to enforce arbitration agreements when members in like circumstances would be foreclosed from doing so. We refuse to embrace such a result.

{19} Finally, Defendants argue that the exception in Rule 10301(a) is inapplicable to Holguin on the basis that his NASD membership was still valid. They assert that despite the suspension of Holguin's membership, his eligibility to re-apply was an equivalent status. We do not agree. Privileges of a membership issued by a regulatory authority far exceed privileges that accompany eligibility to *re*-apply for membership. *See Santillo v. N.M. Dep't of Pub. Safety,* 2007–NMCA–159, ¶ 21, 143 N.M. 84, 173 P.3d 6 (holding that even when all requirements for license renewal are met, a party remains unlicensed until an agency affirmatively issues a renewal). Holguin's NASD membership was suspended simultaneously with that of WMAS. At the moment of suspension, Holguin was no longer a licensed member of NASD, and he remained ineligible to sell securities until such time as he was again employed by an NASD member and had his license reinstated. These events did not occur until after Medina had filed suit and Holguin had gone to work for another firm.

**CONCLUSION**

{20} We conclude that neither Holguin nor WMAS meets the arbitration requirements of NASD as provided by Rule 10301(a). We find no language in Rule 10301(a) to indicate that an associated person may compel arbitration with a customer after the lapse of its qualifying member's NASD membership. As a party who was no longer associated with a member, Holguin had no right to compel arbitration. We reverse and remand to the

district court for proceedings in accordance with this opinion.

{21{ **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD and JAMES J. WECHSLER, Judges.