Filed 5/23/13

CERTIFIED FOR PARTIAL PUBLICATION[*]

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| RONAY FAMILY LIMITED PARTNERSHIP, | D062195 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2011-00091226-CU-FR-CTL) |
| ROBERT R. TWEED et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of San Diego County, Joan M. Lewis, Judge. Reversed and remanded with directions.

Fields, Fehn & Sherwin, H. Thomas Fehn, Gregory J. Sherwin and Orly Davidi for Defendants and Appellants.

Law Offices of Timothy C. Karen and Timothy C. Karen for Plaintiff and Respondent.

---

[*]     Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part III.C..

Robert R. Tweed (Tweed) and his investment firm, Tweed Financial Services, Inc. (TFI), appeal the order denying their petition to compel arbitration of claims for damages asserted against them by Ronay Family Limited Partnership (Ronay). The claims arose out of Tweed's provision of advice concerning Ronay's purchase of investments offered by CapWest Securities, Inc. (CapWest), for which Tweed and TFI acted as registered representatives or agents. The trial court ruled that the rights of Tweed and TFI, as entities acting on behalf of CapWest, to compel arbitration derived from and depended upon the corresponding right of CapWest. The court further ruled that because CapWest is now defunct, and therefore under the rules of the Financial Industry Regulatory Authority (FINRA)[1] cannot compel arbitration, Tweed and TFI cannot compel arbitration either. We disagree, reverse the challenged order, and remand for further proceedings.

## I.

## FACTUAL BACKGROUND

Tweed is a financial adviser and the president of TFI, a financial and estate planning firm. Neither Tweed nor TFI has ever been a member of FINRA.[2] Tweed,

---

[1]     FINRA is the self-regulatory organization for securities brokers and brokerage firms and is the successor to the National Association of Securities Dealers, Inc. (NASD). (*Lickiss v. Financial Industry Regulatory Authority* (2012) 208 Cal.App.4th 1125, 1128 & fn. 2.) FINRA is responsible for regulatory oversight of all securities brokers and firms that do business with the public; professional training, testing, and licensing of persons registered by FINRA; and arbitration and mediation of disputes. (*Id.* at p. 1128.)

[2]     Rule 12100(o) of FINRA's Code of Arbitration Procedure for Customer Disputes defines "member" as "any broker or dealer admitted to membership in FINRA, whether

however, has at all relevant times been registered with FINRA as an associated person of a securities broker-dealer.[3]

Tweed opened an investment account for Ronay with CapWest, which at the time was a securities broker, investment adviser, and registered member of FINRA through which Tweed and TFI offered investments. To open the account, Ronay's general partner and Tweed, as CapWest's registered representative, filled out a new account form and signed an account agreement and disclosure statement. The agreement contained an arbitration clause, which states in part:

> "I (we) agree that unless unenforceable due to federal or state law, any controversy arising out of or related to my (our) accounts, the transactions with [CapWest], its officers, directors, agents, registered representatives and/or employees for me (us), or related to this agreement or breach thereof, shall be settled by arbitration in accordance with the rules then in effect of the National Association of Securities Dealers, Inc. (NASD). Such arbitration shall follow the procedures as set forth by a national arbitration committee of the NASD."

---

or not the membership has been terminated or cancelled; and any broker or dealer admitted to membership in a self-regulatory organization that, with FINRA consent, has required its members to arbitrate pursuant to the Code and/or to be treated as members of FINRA for purposes of the Code, whether or not the membership has been terminated or cancelled."

[3] Rules 12100(a) and 12100(r) of FINRA's Code of Arbitration Procedure for Customer Disputes together define "associated person" as (1) "[a] natural person who is registered or has applied for registration under the Rules of FINRA" or (2) "[a] sole proprietor, partner, officer, director, or branch manager of a member, or other natural person occupying a similar status or performing similar functions, or a natural person engaged in the investment banking or securities business who is directly or indirectly controlling or controlled by a member, whether or not any such person is registered or exempt from registration with FINRA under the By-Laws or the Rules of FINRA."

Upon Tweed's recommendation, Ronay invested more than $4 million in several tenancy-in-common interests in real property offered by CapWest. Those investments failed.

## II.

## PROCEDURAL BACKGROUND

Ronay sued Tweed, TFI, CapWest, and 13 other entities that participated in the investments in the tenancy-in-common interests. Ronay sought to recover damages and other relief on various theories, including breach of fiduciary duty, negligence, misrepresentation, and statutory unfair competition. The gist of Ronay's complaint is that Tweed and the other defendants misled Ronay about the risks of the tenancy-in-common investments and induced Ronay to make unacceptably risky investments, which ultimately failed.

Tweed and TFI filed a petition to compel arbitration in which they set forth the arbitration clause quoted above; alleged the existence of a controversy within the scope of the clause, and Ronay's refusal to submit the controversy to arbitration; and requested an order directing Ronay to arbitrate the controversy before FINRA. (See Code Civ. Proc., § 1281.2.) Tweed and TFI also moved for a stay of the action pending completion of arbitration. (See *id*., § 1281.4.)

Ronay opposed the petition and motion on the ground that the arbitration agreement was unenforceable because CapWest was defunct and FINRA had cancelled its membership. In support of this argument, Ronay relied on rule 12202 of FINRA's

4

Code of Arbitration Procedure for Customer Disputes (FINRA Rule 12202),[4] which makes ineligible for arbitration claims by or against inactive members unless, after the claim arises, the customer agrees in writing to arbitrate. Ronay further argued that Tweed and TFI "cannot assert alleged contractual rights as an agent of [CapWest] which their principal [CapWest] itself does not have."

In reply, Tweed and TFI conceded Ronay's claims against CapWest were ineligible for arbitration under FINRA Rule 12202, but contended that rule does not prohibit them from enforcing the arbitration agreement. They argued that FINRA Rule 12202 applies only to claims by or against former members of FINRA, and neither Tweed nor TFI has ever been a member of FINRA. Tweed also asserted that he is an associated person in good standing with FINRA, and he and his firm may enforce the arbitration clause of the account agreement between Ronay and CapWest under principles of agency and third party beneficiary.

After hearing oral argument, the trial court issued the following minute order:

> "In this case the Court finds that Tweed's rights to compel arbitration are dependent on their principal's rights. Here, Tweed's principal was [CapWest]. It is undisputed that CapWest is defunct and no longer maintains the right — absent [Ronay's] agreement — to compel arbitration. See FINRA Rule 12202. Because [Ronay] has not agreed to proceed to arbitration and because CapWest has no right to compel arbitration, the Court denies the moving Defendants' petition to compel arbitration."

---

4    FINRA Rule 12202 provides that a claim against a member is ineligible for arbitration under the Code unless the customer agrees in writing to arbitrate after the claim arises in the following circumstances: (1) the member's "membership is terminated, suspended, cancelled or revoked"; (2) the member "has been expelled from FINRA"; or (3) the member "is otherwise defunct."

From this order, Tweed and TFI filed a timely notice of appeal. (See Code Civ. Proc., § 1294, subd. (a) [aggrieved party may appeal order denying petition to compel arbitration].)

III.

DISCUSSION

The parties do not dispute that the claims asserted by Ronay "aris[e] out of or relate[] to" Ronay's "transactions with [CapWest], its agents, . . . [or] registered representatives," and therefore involve subject matter that falls within the scope of the applicable arbitration clause. Rather, the primary disputed issue on appeal concerns who may enforce that clause. Tweed and TFI contend they have a right to enforce the clause because: (1) Tweed signed the account agreement in his individual capacity; (2) they are third party beneficiaries of the account agreement; and (3) they acted as agents of CapWest. Ronay counters that Tweed and TFI have no greater rights concerning arbitration than does CapWest; and since CapWest is defunct and cannot compel arbitration under FINRA's arbitration rules, Tweed and TFI cannot compel arbitration. Alternatively, Ronay argues that even if Tweed and TFI may enforce the arbitration clause, we may affirm the order denying their petition to compel arbitration because there are several other defendants not entitled to arbitration, the claims against all defendants arise out of related transactions, and there is a possibility of conflicting rulings on common questions of law or fact. (See Code Civ. Proc., § 1281.2, subd. (c).) As we shall explain, the trial court erred by denying the petition to compel arbitration.

6

A. *Standard of Review*

Although, as noted, the parties disagree over whether Tweed and TFI have the right to compel arbitration, they agree (as do we) that the relevant underlying facts are not in dispute. Therefore, whether Tweed and TFI have the right to enforce the arbitration clause of the account agreement between Ronay and CapWest presents a question of law, which we review de novo. (See, e.g., *Thomas v. Westlake* (2012) 204 Cal.App.4th 605, 613 (*Thomas*); *Turtle Ridge Media Group, Inc. v. Pacific Bell Directory* (2006) 140 Cal.App.4th 828, 833.)

B. *Tweed and TFI May Enforce the Arbitration Clause of the Account Agreement Between Ronay and CapWest as Agents or Third Party Beneficiaries*

Tweed and TFI sought to compel arbitration pursuant to the arbitration clause of the agreement by which Ronay opened an investment account with CapWest. The general rule is that only a party to an arbitration agreement may enforce it. (*DMS Services, Inc. v. Superior Court* (2012) 205 Cal.App.4th 1346, 1352 (*DMS Services*); *Thomas*, *supra*, 204 Cal.App.4th at p. 613; *Smith v. Microskills San Diego L.P.* (2007) 153 Cal.App.4th 892, 896.) Although Tweed contends he is a party to the account agreement because he signed it in his individual capacity, the record belies this contention. The account agreement identified Ronay as the customer and CapWest as the brokerage firm with which Ronay opened the account. In addition, Tweed printed his name and placed his signature on lines for the "REGISTERED REPRESENTATIVE" of CapWest. Since it is apparent from the face of the account agreement that Tweed signed as the agent of CapWest, he is not a party to the agreement with rights and obligations

7

thereunder. (See, e.g., *Filippo Industries, Inc. v. Sun Ins. Co.* (1999) 74 Cal.App.4th 1429, 1442-1443 [agent that contracts for disclosed principal is not a party to contract]; *Lippert v. Bailey* (1966) 241 Cal.App.2d 376, 382 ["'Where the signature as agent and not as a principal appears on the face of the contract, the principal is liable and not the agent.'"].) Hence, Tweed does not come within the general rule that allows only parties to enforce an arbitration agreement.

That is not the end of the matter, however, because the law recognizes exceptions to the general rule and allows a nonparty to enforce an arbitration agreement provided the nonparty has "'a sufficient "identity of interest"'" with a party to the agreement. (*DMS Services*, *supra*, 205 Cal.App.4th at p. 1353; see also *Valley Casework, Inc. v. Comfort Construction, Inc.* (1999) 76 Cal.App.4th 1013, 1021 ["in many cases, nonparties to arbitration agreements are allowed to enforce those agreements where there is sufficient identity of parties"].) In particular, an agent may enforce an arbitration agreement to which its principal is a party. (*Dryer v. Los Angeles Rams* (1985) 40 Cal.3d 406, 418 (*Dryer*); *Thomas*, at p. 614; *Nguyen v. Tran* (2007) 157 Cal.App.4th 1032, 1036-1037.) Also, a third party beneficiary of an arbitration agreement may enforce it. (*Cione v. Foresters Equity Services, Inc.* (1997) 58 Cal.App.4th 625, 636-640 (*Cione*); *Macauly v. Norlander* (1992) 12 Cal.App.4th 1, 6-8 (*Macauly*); *Outdoor Services, Inc. v. Pabagold, Inc.* (1986) 185 Cal.App.3d 676, 681-684 (*Outdoor Services*).) The agency and third party beneficiary exceptions both apply here.

To invoke the agency exception, Tweed and TFI had to show that they "represent[ed] another, called the principal, in dealings with third persons." (Civ. Code,

8

§ 2295.) In their petition to compel arbitration, Tweed and TFI alleged that CapWest was a party to the account agreement containing the arbitration clause; and when Ronay opened the investment account through Tweed and TFI, Tweed acted as an agent and a registered representative of CapWest. Ronay admitted these allegations by not filing a response to the petition. (See Code Civ. Proc., § 1290.) Further, in its operative complaint, Ronay alleged generally that all defendants acted as agents of one another; and alleged specifically that Tweed was the president, owner, and an authorized agent of TFI, and also that he was "a Registered Investment Advisor affiliate with [CapWest]" and "acted as an authorized agent of [CapWest]." On this record, Tweed and TFI made a prima facie showing that they were agents of CapWest, and as such had a right to enforce the arbitration clause of the account agreement between Ronay and CapWest. (See, e.g., *Dryer*, *supra*, 40 Cal.3d at p. 418; *Thomas*, *supra*, 204 Cal.App.4th at p. 614.)

To invoke the third party beneficiary exception, Tweed and TFI had to show that the arbitration clause of the account agreement was "made expressly for [their] benefit." (Civ. Code, § 1559.) It is "not necessary that the beneficiary be named and identified as an individual. A third party may enforce a contract where he shows that he is a member of a class of persons for whose benefit it was made." (*Garratt v. Baker* (1936) 5 Cal.2d 745, 748; accord, *Cargill, Inc. v. Souza* (2011) 201 Cal.App.4th 962, 967.) Here, the account agreement requires arbitration of "any controversy arising out of or related to [Ronay's] accounts, the transactions with [CapWest], *its* officers, directors, *agents*, *registered representatives* and/or employees for [Ronay]." (Italics added.) As already noted, Tweed and TFI acted as CapWest's agents; and Tweed signed the account

9

agreement as CapWest's registered representative. By expressly requiring arbitration of claims against CapWest's agents and registered representatives, the arbitration clause was intended to benefit nonparties such as Tweed and TFI. Tweed and TFI therefore made a prima facie showing sufficient to allow them to enforce the arbitration clause as third party beneficiaries. (See *Cione*, *supra*, 58 Cal.App.4th at pp. 636-637 [employer of applicant who signed NASD registration form containing clause requiring arbitration of any dispute with applicant's "firm" could compel arbitration as third party beneficiary]; *Macauly*, *supra*, 12 Cal.App.4th at p. 8 [introducing broker could compel arbitration as third party beneficiary of clause in contract between customer and clearing broker that required arbitration of controversies with introducing broker]; *Outdoor Services*, *supra*, 185 Cal.App.3d at pp. 682-684 [local advertising firm could enforce arbitration clause of contract between product manufacturer and advertising agency that authorized agency to enter into contracts with third parties concerning advertising of product].)

Ronay contends neither Tweed nor TFI can compel arbitration because the arbitration clause of the account agreement between Ronay and CapWest is, by its own terms, "unenforceable due to federal or state law." Specifically, Ronay argues that Tweed and TFI cannot enforce the arbitration clause as either agents or third party beneficiaries because CapWest cannot enforce it. In support of this argument, Ronay asserts (and Tweed and TFI concede) that since CapWest is no longer a member of FINRA and Ronay does not consent to arbitration, under FINRA Rule 12202 (see fn. 4, *ante*) CapWest cannot enforce the arbitration clause. (See *Provencio v. WMA Securities, Inc.* (2005) 125 Cal.App.4th 1028, 1032-1033 [petition to compel arbitration of dispute

10

between customer and former NASD member properly denied under substantively identical NASD rule when customer had not executed postdispute written agreement to arbitrate]; *Galey v. World Marketing Alliance* (5th Cir. 2007) 510 F.3d 529, 533-534 (*Galey*) [same].)  Ronay also relies on the rules that under a contract an agent "is not entitled to any greater right than his principal" (*Berman v. Dean Witter & Co., Inc.* (1975) 44 Cal.App.3d 999, 1004 (*Berman*)), and a "third-party beneficiary cannot assert greater rights than those of the promisee under the contract" (*Marina Tenants Assn. v. Deauville Marina Development Co.* (1986) 181 Cal.App.3d 122, 132 (*Marina Tenants Assn.*)). Thus, according to Ronay, when CapWest lost the right to compel arbitration upon termination of its FINRA membership, Tweed and TFI lost any derivative rights to compel arbitration they might have had as agents or third party beneficiaries.  As we shall explain, although this argument has superficial appeal, it fails upon close examination.

Ronay's contention that a third party whose rights under a contract derive from those of a party to the contract cannot assert rights greater than those of the contracting party is usually true.  For example, an agent ordinarily has no contract rights greater than those of the principal, because in seeking to assert rights under the principal's contract, the agent "is subject to the same defenses by the other party thereto."  (Rest.2d Agency, § 375, p. 166; see *Berman*, *supra*, 44 Cal.App.3d at p. 1004 [citing Rest.2d Agency, § 375 as support for holding agent subject to arbitration clause of principal's contract].) Similarly, a third party beneficiary ordinarily has no contractual rights greater than those of the promisee, because the promisor generally may assert against the beneficiary any defense the promisor has against the promisee.  (Rest.2d Contracts, § 309, p. 458; see

11

*Mercury Casualty Co. v. Maloney* (2003) 113 Cal.App.4th 799, 803 ["third party beneficiary's rights under the contract are subject to the conditions imposed therein"]; *Harris v. Superior Court* (1986) 188 Cal.App.3d 475, 479 [third party beneficiary subject to arbitration clause of promisee's contract]; *Skylawn v. Superior Court* (1979) 88 Cal.App.3d 316, 319 ["A third party beneficiary is as much subject to the statute of limitations as the promisee to the contract which created the rights of the beneficiary."].) The flaw in Ronay's argument is that these are *general* rules that do not apply to this *particular* case.

The general rules governing the rights of agents and third party beneficiaries under contracts between other parties "should not be applied so inflexibly as to defeat the intention of the parties." (*Schneider Moving & Storage Co. v. Robbins* (1984) 466 U.S. 364, 370-371.) In particular, the rule that a promisor's defense against a promisee is also good against a third party beneficiary does not apply when the language of the contract or the circumstances surrounding its execution establish that the rights of the beneficiary are not subject to that defense. (*Id.* at p. 371; accord, 13 Williston on Contracts (4th ed. 2000) § 37:55, p. 327; Rest.2d Contracts, § 309, com. b, p. 459.) A "beneficiary's right is direct, not merely derivative, and claims and defenses of the promisor against the promisee arising out of separate transactions," e.g., a breach by the promisee after the contract is formed, "do not affect the right of the beneficiary except in accordance with the terms of the contract." (Rest.2d Contracts, § 309, com. c, p. 460; see *Lopez v. Taylor* (Tenn.Ct.App. 2005) 195 S.W.3d 627, 635 ["'[w]rongful acts of the promisee, subsequent to the making of the contract, that would greatly affect his own right, may not affect the

12

beneficiary's right at all'"].)  Similarly, an agent's contractual rights are not necessarily limited to those the principal may assert.  For example, an "agent may be able to enforce a contract to the extent that the contract contains the promise for the agent's benefit," even though the principal could not enforce it to that extent because the promise was not for the principal's benefit.  (12 Williston on Contracts (4th ed. 1999) § 35:34, p. 353; see *Calhoun v. Downs* (1931) 211 Cal. 766, 770-771 [real estate broker may enforce commission clause in contract between buyer and seller].)  Ultimately, "the foundation of any right the third person may have is the promisor's contract."  (*Marina Tenants Assn.*, *supra*, 181 Cal.App.3d at p. 132.)  Thus, the "key to determining which defenses may be available against the [agent or third party] beneficiary is the relationship among the parties as initially defined in the contract itself."  (*International Bro. E. W., L. U. 308 v. Dave's Elec. Serv., Inc.* (M.D.Fla. 1974) 382 F.Supp. 427, 430.)

Here, the rights and duties of Ronay, CapWest, Tweed, and TFI concerning arbitration of disputes were initially defined by the arbitration clause of the account agreement between Ronay and CapWest.  The arbitration clause gave Ronay and Tweed a right to enforce it as parties; and, as we have explained, it also gave Tweed and TFI, as agents and third party beneficiaries, a right to compel arbitration of certain controversies with Ronay.  The problem here is that the arbitration clause does not itself specify what happens to Tweed and TFI's rights to enforce the arbitration clause if CapWest loses its right to do so based on events occurring after initial contract formation (e.g., loss of FINRA membership).  By agreeing that arbitration would proceed "in accordance with the rules then in effect of the [NASD (now FINRA)]," however, Ronay and CapWest

13

agreed to abide by the FINRA rules governing arbitrability. (See *Galey*, *supra*, 510 F.3d at p. 532; *Cione*, *supra*, 58 Cal.App.4th at p. 644.) One of those rules, FINRA Rule 12202, specifically addresses arbitrability when a member's FINRA membership lapses. (See fn. 4, *ante*.) Thus, to determine whether the arbitration clause remains enforceable by Tweed and TFI despite CapWest's current inability to enforce it, we must apply FINRA Rule 12202, not the general rules governing an agent's or a third party beneficiary's contractual rights on which Ronay relies.

We turn first to the text of FINRA Rule 12202:

"A claim by or against a member in one of the following categories is ineligible for arbitration under the Code unless the customer agrees in writing to arbitrate after the claim arises:  [¶]  [(1)] A Member whose membership is terminated, suspended, cancelled or revoked;  [¶]  [(2)] A member that has been expelled from FINRA; or  [¶]  [(3)] A member that is otherwise defunct."

Courts interpret the FINRA arbitration rules the same way they interpret contracts, giving effect to the parties' intent as expressed by the plain and ordinary meaning of the language they used. (*Wachovia Bank, N.A. v. VCG Special Opportunities Master Fund, Ltd.* (2d Cir. 2011) 661 F.3d 164, 171; *Multi-Financial Securities Corp. v. King* (11th Cir. 2004) 386 F.3d 1364, 1367.) The plain language of FINRA Rule 12202 makes "ineligible for arbitration" claims "by or against *a member*" whose FINRA membership has lapsed (italics added); it says nothing about the arbitrability of a customer's claims against associated persons or others. Hence, the deprivation of the right to compel arbitration upon termination of a member's FINRA membership under FINRA Rule 12202 extends only to the member. (See *White v. Western Title Ins. Co.* (1985) 40

14

Cal.3d 870, 881, fn. 4 [maxim *expressio unius est exclusio alterius* (mention of one thing is exclusion of another) applies to contract interpretation]; cf. *Branch v. Sickert*, No. 2:10-CV-128-RWS, 2011 U.S. Dist. LEXIS 19392, at pp. *12-*13 (N.D. Ga. Feb. 28, 2011) [rejecting argument that under FINRA Rule 12202 an individual formerly affiliated with member firm that became defunct could not compel arbitration of customer dispute, where individual maintained his own registration as FINRA member].)

Limiting the scope of FINRA Rule 12202 to members only is consistent with the NASD's interpretation of its substantively identical predecessor rule.[5] When the NASD adopted the predecessor rule, it stated in a notice sent to members: "The rule applies *only to claims against member firms* that fall into one of the categories enumerated in the rule. . . . [¶] Because *the rule does not apply to claims against associated persons*, such claims remain eligible for arbitration pursuant to Rule 10301(a)." (NASD Notice to Members 01-29, *supra*, p. 278 [2001 NASD Lexis 33, at pp. *5-*6], italics added.) Although the NASD's interpretation of its own arbitration rule is not binding on a court, it is entitled to substantial deference. (*Littman v. Morgan Stanley Dean Witter* (N.J.App.Div. 2001) 337 N.J.Super. 134, 143 [766 A.2d 794, 799]; see also *York*

---

5    In 2001, the NASD amended Rule 10301(a) of its Code of Arbitration Procedure to include the following language: "A claim involving a member in the following categories shall be ineligible for submission to arbitration under the Code unless the customer agrees in writing to arbitrate the claim after it has arisen: [¶] (1) A member whose membership is terminated, suspended, canceled, or revoked; [¶] (2) A member that has been expelled from the NASD; or [¶] (3) A member that is otherwise defunct." (NASD Notice to Members 01-29 (May 2001) p. 279 [2001 NASD Lexis 33, at p. *7].) The only change from NASD Rule 10301(a) to FINRA Rule 12202 is that the phrase "claim involving a member" has been changed to "claim by or against a member."

*Research Corp. v. Landgarten* (2d Cir. 1991) 927 F.2d 119, 123 [when parties agree to arbitrate under rules of particular organization, its "view of the meaning of its rules is of considerable significance"]; *Myer v. Americo Life, Inc.* (Tex.Ct.App. 2012) 371 S.W.3d 537, 545 ["An arbitral body's interpretation of its own rules must be given substantial deference."].) We may not ignore the NASD's view and, under the guise of interpretation, extend the coverage of FINRA Rule 12202 to associated persons and other nonmembers by inserting what was intentionally omitted from the rule. (Code Civ. Proc., § 1858; *PV Little Italy, LLC v. MetroWork Condominium Assn.* (2012) 210 Cal.App.4th 132, 152; *A.B.C. Distrib. Co. v. Distillers Distr. Corp.* (1957) 154 Cal.App.2d 175, 185.)

The terms of a related arbitration rule also indicate that FINRA Rule 12202 applies only to members. Rule 12200 of FINRA's Code of Arbitration Procedure for Customer Disputes (FINRA Rule 12200) requires arbitration of disputes "between a customer and *a member or associated person*," if the "dispute arises in connection with the business activities of *the member or the associated person*" and arbitration is required by a written agreement or requested by the customer. (Italics added.) "[T]here are two conditions that must be satisfied to trigger the [FINRA] arbitration requirement. First, the claim must involve a dispute between either a[] [FINRA]-member and a customer, or an associated person and a customer. Second, the dispute must arise in connection with the activities of the member or in connection with the business activities of the associated person." (*Vestax Securities Corp. v. McWood* (6th Cir. 2002) 280 F.3d 1078, 1081 (*Vestax*) [interpreting substantively identical predecessor NASD rule].) Hence, by requiring arbitration of a customer's dispute with either a member or an associated person

16

in FINRA Rule 12200, FINRA demonstrated that it knows how to write rules that apply to both members and associated persons. Had FINRA wanted to deprive both members and associated persons of the right to compel arbitration when a member loses its membership in FINRA, it easily could have done so by expressly including both members and associated persons in FINRA Rule 12202, as it did in FINRA Rule 12200. FINRA's decision to include members but not associated persons in FINRA Rule 12202 thus supports our conclusion that application of that rule is limited to members. (Cf. *In re Young* (2004) 32 Cal.4th 900, 907 [when one statute contains critical word or phrase, omission of that word or phrase from related statute generally shows different legislative intent]; *Hicks v. E.T. Legg & Associates* (2001) 89 Cal.App.4th 496, 507 [when term is used in one place and excluded in another, term should not be implied where excluded].)

Ronay contends for policy reasons that application of FINRA Rule 12202 should not be limited to members. According to Ronay, the rule should also bar associated persons from enforcing predispute arbitration agreements against customers when the member loses its FINRA membership in order to protect investors and to promote the public interest. In advancing this argument, Ronay quotes the following passage (and others) from a notice the Securities and Exchange Commission issued when it approved the substantively identical predecessor NASD rule:

> "The commission believes that because terminated, suspended, barred or otherwise defunct firms have a significantly higher incidence of non-payment of arbitration awards than do active firms, the proposed rule change will protect investors and the general public by giving customers greater flexibility to seek remedies against such firms. The Commission believes that because of experience with non-payment by such firms, it is inappropriate to permit terminated or suspended members to require

17

customers who have claims against them to arbitrate such claims in the NASD forum when an arbitration award may be unenforceable against the terminated or suspended member. In such cases, the Commission believes that even if customers have signed a predispute arbitration agreement, they should be able to seek relief in court before engaging in arbitration proceedings, where they could more directly avail themselves of any judicial remedies available under state law, including those that might prevent the dissipation of assets. . . . The Commission believes that allowing customers to choose to go directly to seek relief may save them time and expense in cases against members who have been terminated or expelled and in which the dissipation of assets is a threat." (66 Fed. Reg. 19267 (Apr. 13, 2001), fns. omitted.)

Based on this passage, Ronay asserts that "in cases such as this, involving a customer dispute with a firm whose FINRA membership has terminated, the customer has the right to proceed in court," and the "same is equally true with respect to CapWest's agents," Tweed and TFI. We disagree.

Even if the construction urged by Ronay were permissible, it is not clear that construing FINRA Rule 12202 to bar arbitration of customer claims against entities other than the member when the member terminates its membership in FINRA would further the policy underlying the rule. That policy, as stated by the Securities and Exchange Commission, is the prevention of waste of investor time and money in arbitration proceedings that ultimately may prove fruitless because terminated members are significantly less likely than are active members to pay arbitration awards. Ronay does not explain, and it is not apparent, why, in order to save investors the time and expense of arbitrating claims against former members that are unlikely to pay adverse awards, it is necessary or appropriate to include customers' claims against associated persons and others among the disputes made ineligible for arbitration by FINRA Rule 12202.

18

Although the Commission identified a problem with payment of arbitration awards by terminated FINRA members, it did not identify a similar problem with payment by associated persons or others, and we have no basis for concluding such a problem exists. Further, the stated policy concern of sparing investors the time and expense of an arbitration that may prove futile is not implicated in this case. Ronay informed us in its appellate briefing that it already has taken CapWest's default, and it therefore had the opportunity to obtain a judgment against CapWest without first arbitrating their dispute. (See Code Civ. Proc., §§ 579, 585.) In any event, even if Ronay had presented a forceful policy argument for extending FINRA Rule 12202 to associated persons and others — and it has not — a "policy argument does not permit us to ignore the plain language of the [rule]." (*Mercury Ins. Co. v. Vanwanseele-Walker* (1996) 41 Cal.App.4th 1093, 1103; see also *Esberg v. Union Oil Co.* (2002) 28 Cal.4th 262, 270 [when determining applicability of statute, court need not consider public policy underlying statute when its language is clear]; *National Union Fire Ins. Co. v. Miller* (1987) 192 Cal.App.3d 866, 872-873 [public policy argument cannot prevail when it contradicts clear language of contract].)

Finally, we are not persuaded by Ronay's argument that we should follow the decision of the New Mexico Court of Appeals that "an associated person may not compel arbitration with a customer after the lapse of the member's NASD membership." (*Medina v. Holguin* (N.M.Ct.App. 2008) 145 N.M. 303, 305 [197 P.3d 1085, 1087] (*Medina*).) The case before us is distinguishable from *Medina* on the factual issue of the associated person's registration status. According to declarations Tweed submitted in

19

support of the petition to compel arbitration, he has been registered as an associated person with FINRA at all relevant times. Specifically, he was a registered representative affiliated with CapWest when Ronay made the investments at issue in this case; and after CapWest went out of business, he affiliated with a different securities broker-dealer. By contrast, the associated person in *Medina* had his NASD registration suspended when the affiliated member's NASD membership lapsed, and he did not renew it until after initiation of the litigation. (*Ibid.*) Thus, the *Medina* court's holding that the associated person lost his right to compel arbitration under the NASD rules when his registration was suspended and he therefore ceased to be an associated person (*id.* at pp. 1090-1091) would not apply to Tweed because he has maintained his FINRA registration.[6]

---

[6] Ronay argues *Medina*, *supra*, 197 P.3d 1085, is not distinguishable on this ground because "Tweed cannot use his association with other member firms as a basis to compel arbitration of [Ronay's] claims, since [Ronay] did not sign an arbitration agreement with those other member firms. Tweed has no right to compel arbitration of [Ronay's] claims under the account agreements of the other firms he has worked for, so the fact that those other firms were or are FINRA or NASD members is of no consequence to this appeal." This argument is a strawman, because Tweed and TFI are not trying to enforce the arbitration clause of an account agreement of the FINRA member firm with which Tweed now works. Indeed, as Ronay stated in its appellate briefing, "it is only the CapWest arbitration agreement that the Tweed Defendants are trying to enforce in this case." Thus, the fact that after CapWest became defunct Tweed affiliated with another FINRA member firm does not serve to distinguish *Medina* on the ground that a separate arbitration agreement enforceable by Tweed and TFI exists between Ronay and that firm. Rather, Tweed's subsequent affiliation with another FINRA member firm shows that, unlike the associated person in *Medina*, whose NASD membership was suspended and who thus ceased to be an associated person entitled to compel arbitration, Tweed maintained his status as an associated person registered with FINRA and, as such, retained his right to compel arbitration under the account agreement between Ronay and CapWest.

Moreover, the broad pronouncements by the *Medina* court on which Ronay relies do not apply to this case. For example, the *Medina* court stated that "an associated person, being dependent for its status on and derivative of the member's, should likewise lose NASD privileges upon termination of the qualifying membership"; a "privilege held by an associated person, by its nature, cannot exist independently of the member"; and "[a]ssociated persons *have no* status apart from that of their qualifying member." (*Medina*, *supra*, 197 P.3d at pp. 1090, 1091.) Even if we assume, without deciding, that those statements were consistent with the NASD arbitration rules at issue in *Medina*, they are not consistent with the FINRA arbitration rules that govern this case.

Under the FINRA rules, members and associated persons are defined as separate entities with separate rights concerning arbitration of customer disputes. FINRA Rule 12100(o) defines a "member" as "any broker or dealer admitted to membership in FINRA." FINRA Rules 12100(a) and 12100(r) together define an "associated person" to include not only a natural person engaged in the investment banking or securities business who controls or is controlled by a member, but also a "natural person who is registered or has applied for registration under the Rules of FINRA" without any required affiliation with a particular member. Further, by requiring arbitration of disputes "between a customer and a member *or* associated person" arising out of "the business activities of the member *or* the associated person" (italics added), FINRA Rule 12200 recognizes that members and associated persons have independent rights to compel arbitration of disputes with customers. (See *Vestax*, *supra*, 280 F.3d at p. 1081 [discussing disjunctive nature of arbitration requirement under substantively identical

21

predecessor NASD rule].) Lastly and most importantly, as we have explained, when a member loses its FINRA membership, under FINRA Rule 12202 only the member, not the associated person, loses the right to compel arbitration. For these reasons, we decline to follow the holding of *Medina*, *supra*, 197 P.3d at page 1087, that an associated person may not compel arbitration of a customer dispute after the lapse of the member's membership.

In sum, we hold that Tweed and TFI may enforce the arbitration clause of the account agreement between Ronay and CapWest as agents of CapWest and as third party beneficiaries of the agreement. We further hold that even though CapWest became defunct and under FINRA Rule 12202 lost its right to enforce the arbitration clause, Tweed and TFI nevertheless retained their rights to do so.

C.      *The Order Denying the Petition to Compel Arbitration May Not Be Affirmed on the Alternative Ground That the Order Was Authorized by Code of Civil Procedure Section 1281.2, Subdivision (c)*

Ronay contends we may affirm the trial court's order pursuant to Code of Civil Procedure section 1281.2, subdivision (c), which allows a court to refuse to compel arbitration if "[a] party to the arbitration agreement is also a party to a pending court action . . . with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact." According to Ronay, because there are 13 other defendants who participated in the tenancy-in-common investments but are not parties to the arbitration agreement and did not join in Tweed and TFI's petition to compel arbitration, the trial court had discretion to

22

deny the petition to avoid the risk of conflicting rulings on common issues. As we shall explain, the record is inadequate for us to affirm on this ground.

A respondent generally may urge affirmance of a challenged order on any legal ground supported by the record, even if the trial court did not consider that ground. (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 32; *Little v. Los Angeles County Assessment Appeals Bds.* (2007) 155 Cal.App.4th 915, 925, fn. 6.) Affirmance on an alternate ground is ordinarily permissible because an appellate court reviews the trial court's action, not its reasoning, and will not reverse an order that is correct on any applicable legal theory simply because the trial court gave an erroneous reason for the order. (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 18-19; *Woods v. Union Pacific Railroad Co.* (2008) 162 Cal.App.4th 571, 576.) Thus, although we may consider a new theory urged by a respondent that merely requires application of law to established facts already in the record (*Fort Bragg Unified School Dist. v. Colonial American Casualty & Surety Co.* (2011) 194 Cal.App.4th 891, 907; *Shaw v. Regents of University of California* (1997) 58 Cal.App.4th 44, 51), we will not consider a new legal theory urged by a respondent when the record needed to consider that theory was not developed in the trial court (*In re Marriage of Hokanson* (1998) 68 Cal.App.4th 987, 992, fn. 3; *14859 Moorpark Homeowner's Assn. v. VRT Corp.* (1998) 63 Cal.App.4th 1396, 1403, fn. 1 (*14859 Moorpark*)).

To support denial of a petition to compel arbitration on the basis of Code of Civil Procedure section 1281.2, subdivision (c), the record must indicate the trial court properly made several determinations. Preliminarily, the court must determine that the

action includes arbitrable and nonarbitrable claims arising out of the same or related transactions and presenting a possibility of conflicting rulings on common issues of law or fact. (*Ibid.*) If those conditions exist, the court then must decide whether to: (1) refuse to order arbitration, and order intervention or joinder of all parties in a single action; (2) order intervention as to all or only certain issues; (3) order arbitration among the parties who have agreed to arbitrate, and stay the action pending the outcome of the arbitration; or (4) stay the arbitration pending the outcome of the action. (§ 1281.2, foll. subd. (c); *Metis Development LLC v. Bohacek* (2011) 200 Cal.App.4th 679, 691 (*Metis*).) The court has discretion to choose among these options, guided largely by the extent to which conflicting rulings on common issues may be avoided. (*Cronus Investments, Inc. v. Concierge Services* (2005) 35 Cal.4th 376, 393; *Metis*, at pp. 692-693.) To deny arbitration due to a possibility of conflicting rulings, however, "there must be not only the possibility of conflicting rulings, but a determination that this possibility should lead to the denial of arbitration, rather than one of the other alternatives set forth in the statute." (*Metis*, at p. 690.)

Our review of the record disclosed that the only mention of Code of Civil Procedure section 1281.2, subdivision (c) in the trial court occurred at the hearing on the petition to compel arbitration:

> "[Ronay's counsel:] There's a lot of other defendants that are not subject to arbitration, and they have stated their intention to litigate the case in court. Therefore, as an alternative basis, the court could deny arbitration under Code of Civil Procedure section 1281.2(c). It wasn't briefed."

> "The Court: That crossed my mind when they were here ex parte asking for dates for summary judgment motions . . . . There's a ton of other

24

defendants besides the Tweed defendant[s] in this case and one other one. . . . So that did cross my mind as also part of this concern."

Ronay did not discuss and the court did not consider: (1) whether there were common issues of law or fact; (2) whether there was a possibility of conflicting rulings on those issues; (3) the various options under section 1281.2 for dealing with that possibility; or (4) whether that possibility "should lead to the denial of arbitration, rather than one of the other alternatives set forth in the statute." (*Metis*, *supra*, 200 Cal.App.4th at p. 690.) In short, the record necessary for a proper exercise of the court's discretion under section 1281.2, subdivision (c) was never developed. Without that record, we cannot conclude the court properly would have refused to order arbitration based on that statute. We therefore decline to affirm on that basis. (See *In re Marriage of Hokanson*, *supra*, 68 Cal.App.4th p. 992, fn. 3; *14859 Moorpark*, *supra*, 63 Cal.App.4th at p. 1403, fn. 1.)

Nevertheless, given the potential applicability of Code of Civil Procedure section 1281.2, subdivision (c) and the state of the record, we reverse the order denying the petition to compel arbitration and remand the matter for further consideration under that statute. On remand, the court shall determine (1) whether there is a possibility of conflicting rulings on common questions of law or fact and, if so, (2) whether, in light of the nature and extent of that possibility, the court should refuse to order Ronay to arbitrate its claims against Tweed and TFI or should select another option for dealing with that possibility. (See Code Civ. Proc., § 1281.2, foll. (c); *Metis*, *supra*, 200 Cal.App.4th at p. 694.)

25

DISPOSITION

The order denying the petition to compel arbitration is reversed, and the matter is remanded to the superior court for further proceedings consistent with this opinion.

_____

IRION, J.

WE CONCUR:


_____

McINTYRE, Acting P.J.


_____

O'ROURKE, J.