Filed 9/2/15  Kurtin v. Elieff CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| TODD KURTIN, | |
| Plaintiff and Respondent, | G049556 |
| v. | (Super. Ct. No. 30-2007-00100307) |
| BRUCE ELIEFF, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from an order of the Superior Court of Orange County, Nancy Wieben Stock, Judge.  Affirmed.

Miller Barondess, Louis R. Miller, Daniel S. Miller, Mira Hashmall and Keola R. Whittaker for Defendant and Appellant.

Weintraub Tobin, Gary A.Walderon and Sherry S. Bragg for Plaintiff and Respondent.

\*        \*        \*

Todd Kurtin filed suit against Bruce Elieff in 2007, alleging causes of action relating to Elieff's performance under an earlier settlement agreement. After the dispute went to trial in a bifurcated proceeding and judgment was entered, the trial court granted a partial new trial. On appeal, this court expanded the scope of that partial new trial. The case was remanded to the trial court, whereupon Elieff petitioned for arbitration, seeking the arbitrator's "interpretation or clarification" of aspects of the settlement agreement, prior to the partial retrial. The trial court denied the petition, concluding Elieff had waived his right to arbitrate.

We affirm that ruling. Elieff has, in effect, petitioned for arbitration *in the middle of trial*. Such a petition is untimely as a matter of law. If Elieff wished to enforce his right to have the settlement agreement interpreted by an arbitrator, rather than the court, for purposes of litigating Kurtin's claims, he was required to do so before those same issues were submitted to the court for adjudication on the merits.

FACTS

Kurtin and Elieff were equal partners in a series of real estate ventures in the 1990's. However, as Kurtin and Elieff structured their partnership, each real estate project operated as its own little company, referred to by the parties as the "Joint Entities." In 2003, growing disagreements between the two led Kurtin to sue Elieff to "separate" their interests in the Joint Entities. That litigation spawned a mediation, which in turn produced a settlement agreement. That agreement, signed in August 2005, provided that Elieff was to buy out Kurtin for $48.8 million in four installment payments.

The recitations at the beginning of the settlement agreement purport to treat Elieff and the Joint Entities as one collective party to the agreement: "This Settlement Agreement is entered into . . . between Todd Kurtin . . . and Bruce Elieff, the Elieff

2

Separate Entities identified in Exhibit 'A' and the Joint Projects identified in Exhibit 'B' on the other hand (collectively 'Elieff')."

The settlement agreement provided that of the $48.8 million, both Elieff and the Joint Entities were jointly and severally responsible for the first installment of $21 million. However, only the Joint Entities, and not Elieff, were responsible for paying the last three installments.

Moreover, the text of the settlement agreement contemplates that the assets of the Joint Entities would secure its obligations under the agreement. It does so in paragraph 14 by both requiring Elieff personally to "execute customary documents necessary to perfect" a security interest to be held by Kurtin and by preventing Elieff from taking distributions which impair that security. Elieff signed the settlement agreement both "individually and on behalf of the Elieff Separate Entities and the Joint Entities." The agreement had provided that if there was a default in any of the last three payments, Kurtin would be "entitled to have judgment entered pursuant to C.C.P. Section 664.6 against the Joint Entities" in an amount equal to the unpaid balance.

Finally, paragraph 15 of the settlement agreement contains an unusual arbitration clause. It provides, in pertinent part: "In the event that any Party claims that one or more material terms have been omitted from this Settlement Agreement, or that the Parties failed to reach an agreement as to one or more material terms, or that any other defect exists with respect to this Settlement Agreement that would make it unenforceable, the Parties agree to final and binding arbitration before Tony Piazza or, if Mr. Piazza is unable, before a mutually agreeable arbitrator. At such arbitration, the arbitrator shall imply a reasonable term that the arbitrator finds consistent with the purpose and intent of this Settlement Agreement or otherwise cure any defect in the Settlement Agreement by amending its terms. The sole act of the arbitrator shall be to issue an amendment to this Settlement Agreement implying such additional terms, curing any ambiguity or otherwise curing any defect in this Settlement Agreement that would

3

make this Settlement Agreement unenforceable.  This Settlement Agreement, together with any amendment issued by the arbitrator, shall be enforceable under C.C.P. Section 664.6."

Elieff paid the first $21 million installment payment, and the Joint Entities made the $1.8 million second installment payment.  But the Joint Entities paid only about $3.5 million of the $13.1 million due as the third installment, and then paid no portion of the final installment of $12.9 million.

Kurtin sought to enforce the agreement against the Joint Entities under Code of Civil Procecure section 664.6 (section 664.6).  Elieff opposed the motion, arguing that because the Joint Entities had not been named as parties to Kurtin's 2003 lawsuit, section 664.6 did not authorize the court to summarily enter judgment against them in accordance with the terms of the settlement agreement.  The trial court agreed and denied the motion.  Moreover, some of the Joint Entities, which were not wholly owned by Elieff, had objected to being held liable for payment of Elieff's obligations under his settlement agreement with Kurtin.  The court, however, did not address the separate question of whether Elieff had the authority to bind the Joint Entities as parties to the settlement agreement.

Rather than attempting to add the Joint Entities as parties to the 2003 case, Kurtin filed a demand for arbitration against Elieff, to ascertain his rights to payment under the settlement agreement.  As pertinent here, the arbitrator determined that Kurtin was still owed $24,411,433.86 in payments under the agreement, and that Kurtin had the right to foreclose on only Elieff's *own* interests in the Joint Entities to enforce payment of that obligation.

Following the arbitration, Kurtin filed this action against Elieff and the Joint Entities.  Although the settlement agreement had not personally obligated Elieff to pay more than $21 million of the $48.8 buyout price, Kurtin sought additional recovery from Elieff on the theory Elieff had misrepresented his authority to obligate the Joint

4

Entities to pay the balance. Kurtin also claimed Elieff had breached a provision in the settlement agreement requiring him to execute the customary documents "necessary to perfect this security interest" in Elieff's interests in the Joint Entities. And finally, Kurtin asserted that Elieff had taken distributions from the Joint Entities that should have gone to pay off the buyout price.

The trial was bifurcated into two phases. Phase I consisted of a five-day trial "concerning the accounting issues" arising out of Kurtin's claim that Elieff had breached the settlement agreement by taking distributions from the Joint Entities that prevented repayment of the remaining settlement obligation. Kurtin had charged that some $22.4 million of "distributions" had been improperly diverted to Elieff himself or to Elieff-controlled entities. After hearing evidence, the court made limited findings: (1) that the settlement agreement "cannot be interpreted as precluding any and all distributions from being utilized for the good of the [Joint Entities as a] whole;" (2) that the 2007 arbitration award "does not preclude [] Kurtin from seeking other redress such as causes of action for fraud or breach of warranty of authority;" and (3) that the evidence "accounted for every penny of the funds that could be classified in any way as a distribution from a joint entity in the period following the August 2005 settlement agreement." However, the court left for the jury to determine in phase II of the trial whether any of the distributions made from the Joint Entities had been made in contravention of the settlement agreement.

Thus, in phase II, the jury was asked to consider six causes of action against Elieff: breach of warranty of an agent's authority under Civil Code section 2342; breach of warranty of an agent's authority under Civil Code section 2343; intentional misrepresentation of Elieff's authority to sign for the Joint Entities; negligent misrepresention of Elieiff's authority to sign for the Joint Entities; breach of the settlement agreement's provision requiring Elieff to execute the documents necessary to perfect Kurtin's security interests in Elieff's share of the Joint Entities; and breach of the

5

settlement agreement's prohibition against distributions by the Joint Entities which prevented them from paying the balance owed Kurtin on the buyout.

The jury returned a mixed verdict. On the one hand, it found Elieff liable for breaching his warranty of authority under both Civil Code sections 2342 and 2343, and that he had committed an act "wrongful in its nature" when he signed the settlement agreement on behalf of the Joint Entities. The jury specifically found Kurtin was harmed by that lack of authority. The jury also determined Elieff had breached the settlement agreement's requirement that he provide Kurtin with perfected security interests in Elieff's shares of the Joint Entities, and that Kurtin was harmed by that breach. And the jury likewise determined Elieff had breached the provision precluding him from taking distributions that prevented the Joint Entities from paying off the balance of the $48.8 million, and that Kurtin was harmed by that breach. On each of those claims, the jury assessed Kurtin's damages at exactly $24,411,433.86 – the amount the arbitrator had identified as the remainder owed by the Joint Entities on the settlement agreement.

On the other hand, the jury also exonerated Elieff on both the intentional and negligent misrepresentation causes of action, and found he had reasonable grounds for believing he had authority to sign the settlement agreement on behalf of the Joint Entities.

After judgment was entered against him, Elieff moved for a judgment notwithstanding the verdict (JNOV) and for a new trial. The court denied the JNOV, but granted the motion for new trial as to damages only on the grounds of excessive damages and insufficiency of the evidence. As the court noted in its order, the jury's award of over $24 million in damages on the cause of action alleging improper distributions from the Joint Entities exceeded the *entire amount* of distributions made by the Joint Entities for all purposes. And Kurtin himself had sought less than $8 million in damages on that cause of action.

6

On appeal, we modified that order to include a new trial on the issue of Elieff's liability for breach of warranty of authority under Civil Code section 2343, noting the inconsistency between the jury's finding that Elieff had committed an act "wrongful in its nature" when he signed the settlement agreement on behalf of the Joint Entities, and its findings that by doing so, he had engaged in neither negligent nor intentional misrepresentation. But we also expressly affirmed "the trial court's determination that Elieff is liable to Kurtin in an as-yet-to-be-determined amount, if any, on Kurtin's causes of action for (a) breach of warranty of an agent's authority under [Civil Code] section 2342; (b) breach of the provision of the settlement agreement that Elieff would execute the documents necessary to perfect Kurtin's security interests in Elieff's share of the Joint Entities; and (c) for breach of the provision of the settlement agreement not to take distributions which prevented the Joint Entities from paying the balance of the buyout amount." (*Kurtin v. Elieff* (2013) 215 Cal.App.4th 455, 487.)

Following remand to the trial court, Elieff filed a petition to compel arbitration of three issues: First, "[t]hat Elieff signed the [Settlement] Agreement only for his interests and not for any third-party owners of the Joint [E]ntities." Elieff claimed this determination was "necessary because if [he] did not sign for third-party interests, then Kurtin has no damages for his two breach of warranty of authority claims and has no liability based on the claim from breach of warranty of authority under Civil Code section 2343." Second, Elieff sought "[c]onfirmation that the security documents Kurtin was entitled to receive would have granted him security enabling him to take Elieff's right, title and interest in the joint entities (the same right he received in the . . . June 2007 arbitration award)." Elieff claimed this determination was "necessary to ascertain what damages, if any, flow from Elieff's failure to provide customary security documents." And third, Elieff sought "[c]onfirmation that 'distributions' means profits from the joint entities as a whole." He claimed this determination was "necessary to ascertain what damages, if any, Kurtin has sustained on this breach of contract claim."

7

Kurtin opposed the petition to arbitrate, arguing (1) the petition should be dismissed as an improper attempt to relitigate the same legal issues already submitted to the court in the guise of a motion for summary judgment and motions in limine, and (2) Elieff had waived his right to compel arbitration of these issues. The trial court denied the motion, agreeing with both arguments made by Kurtin: "As correctly and precisely set out in the Opposition, the issues sought to be decided by arbitration were already raised by Elieff and decided. Even if they were not decided, they were raised, which is evidence of a waiver of a right to arbitrate. As set forth in the Opposition, the right to arbitrate was also waived by the bringing of a motion for summary judgment on the merits, by litigating merits issues, by litigating for six years, by conducting discovery, and by participating in trial and an appeal." The court also found that "it has not been shown the Parties ever intended that arbitration would be used in, during, after or around a fully litigated court case . . . ."

DISCUSSION

*1. Background Law*

An order denying a motion to compel arbitration is appealable. (Code Civ. Proc., § 1294, subd. (a).) If there is no dispute concerning the language of the arbitration clause, we review de novo its applicability to the case. (See *Ronay Family Limited Partnership v. Tweed* (2013) 216 Cal.App.4th 830, 837; *EFund Capital Partners v. Pless* (2007) 150 Cal.App.4th 1311, 1320.)

"In light of the policy in favor of arbitration, 'waivers are not to be lightly inferred and the party seeking to establish a waiver bears a heavy burden of proof.' [Citation.] 'Generally, the determination of waiver is a question of fact, and the trial court's finding, if supported by sufficient evidence, is binding on the appellate court. [Citations.] "When, however, the facts are undisputed and only one inference may

8

reasonably be drawn, the issue is one of law and the reviewing court is not bound by the trial court's ruling.""'" (*Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 375.)

In *Doers v. Golden Gate Bridge etc. Dist*. (1979) 23 Cal.3d 180, 188, our Supreme Court noted that waiver of the right to arbitrate is established when there has been "judicial *litigation* of the merits of arbitrable issues." The court also recognized "waiver could occur prior to a judgment on the merits if prejudice could be demonstrated." (*Id*. at p. 188, fn. 3.) And in *St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1204 (*St. Agnes*), the Supreme Court explained that "courts have found prejudice where the petitioning party used the judicial discovery processes to gain information about the other side's case that could not have been gained in arbitration" or "where a party unduly delayed and waited until the eve of trial to seek arbitration."

So waiver of the right to arbitrate is demonstrated when (1) there has been judicial litigation of the merits of arbitrable issues; (2) resort to the judicial system has otherwise resulted in prejudice, such as where a party used the judicial process to gain information about its opponent's case that would not be available in arbitration; and (3) a party unduly delayed and waited until the eve of trial to seek arbitration.

2. *The "Unique" Arbitration Clause*

Elieff's primary contention on appeal is that the trial court erred in denying his petition to arbitrate because it failed to recognize that the arbitration clause incorporated into the parties settlement agreement is a "*unique* arbitration clause." He claims that "[u]nlike most cases, arbitration is not a substitute for court proceedings. Instead, the arbitrator had the *sole power* to resolve contract ambiguities." (Italics added.) And because he "invoked his right to seek clarification of the Agreement from

the arbitrator before the new trial," Elieff claims he was entitled to compel arbitration of the issues he raised as a matter of law. We disagree.

The arbitration clause at issue here is unusual, if not unique, in that it expressly gave the arbitrator a power that courts do not have – the power to add or rewrite provisions in the parties' settlement agreement if needed to save the contract from unenforceability. It states that the arbitrator "shall imply a reasonable term that the arbitrator finds consistent with the purpose and intent of this Settlement Agreement or otherwise cure any defect in the Settlement Agreement by amending its terms. The sole act of the arbitrator shall be to issue an amendment to this Settlement Agreement implying such additional terms, curing any ambiguity or otherwise curing any defect in this Settlement Agreement that would make this Settlement Agreement unenforceable." By contrast, courts have no power to add additional terms or rewrite contracts which are legally infirm. (*Armendariz v. Foundation Health Psychcare Services, Inc*. (2000) 24 Cal.4th 83, 124-125 [courts cannot cure contracts by reformation or augmentation]; Civ. Code, § 1670.5 [allowing courts to sever or restrict unconscionable contractual provisions, but not rewrite them].) So as to that *specific authority*, Elieff would be correct in asserting that no court proceeding could be substituted for the agreed arbitration.

But as we concluded in an earlier opinion, this arbitration clause also provides for the arbitration of disputes about the *interpretation* of the settlement agreement (*Kurtin v. Elieff*, *supra*, 215 Cal.App.4th at p. 474; see *People v. Barragan* (2004) 32 Cal.4th 236, 246 [explaining law of the case doctrine]), and it is that power, rather than the power to amend the agreement, that Elieff sought to invoke in his petition. Specifically, he sought to compel arbitration to (1) identify the scope of his authority in signing the settlement agreement, (2) establish the legal effect of the security documents he was required to sign, and (3) interpret the meaning of the word "distributions" in the settlement agreement.

10

To the extent of those interpretation issues, Elieff fails to demonstrate how this arbitration clause operates any differently than essentially every other arbitration provision governing disputes over the interpretation of a contract. As is typical, the clause simply provides for arbitration of legal issues that *would otherwise be adjudicated in a court*. Elieff does assert that the clause in this case is distinctive because it does not merely "vest the arbitrator with the authority to adjudicate disputes under the [Settlement] Agreement – instead, it gives the arbitrator *the sole authority to interpret the Agreement*." But he points to no language that actually says the arbitrator's authority to interpret the agreement would somehow deprive the court of ordinary subject matter jurisdiction (as his assertion implies) and we find none. Instead, the clause simply states that in the event of a dispute concerning the terms of the agreement, the parties "agree to final and binding arbitration" before the individual who acted as their mediator in negotiating the terms of the settlement agreement. That is typical language found in a binding arbitration provision. Nor does the fact the parties identified that specific arbitrator by name change anything. The clause goes on to make clear that its effectiveness does not depend upon the availability of that particular arbitrator. Rather, it states that if he is not available, the parties will arbitrate "before a mutually agreeable arbitrator."

And finally, the fact this arbitration clause limits *the arbitrator's* authority to the "sole act" of amending or interpreting the terms of the settlement agreement, while giving him no power to enforce the agreement, to adjudicate any claimed breach or to award damages, does not automatically impose *the opposite restriction* on the court's authority – nor could it. The court's jurisdiction to adjudicate claims – including those involving the interpretation of agreements – is established by law and exists independently of this (or any other) agreement. "[T]he parties may not *deprive* courts of their jurisdiction over causes by private agreement." (S*mith, Valentino & Smith, Inc. v. Superior Court* (1976) 17 Cal.3d 491, 495.)

11

In short, we find nothing in this aspect of the arbitration clause that materially distinguishes it from the typical arbitration provision which specifies that disputes over the interpretation of an agreement will be submitted to binding arbitration. Although any party to an agreement containing such a provision has the right to petition the court for its enforcement when a dispute arises, if the opposing party does not acquiesce to the arbitral forum (Code Civ. Pro., § 1281.2), it is also true that "a party may give up its right to arbitrate. 'As with any other contractual right, the right to arbitration may be waived.'" (*Service Employees Internat. Union, Local 1021 v. County of San Joaquin* (2011) 202 Cal.App.4th 449, 459.) Thus, if neither party makes a timely effort to enforce the provision in connection with a dispute – i.e., they both waive the right to arbitrate – then the issues that would otherwise be decided in arbitration can still be adjudicated in court. (*St. Agnes Medical Center v. PacifiCare of California, supra,* 31 Cal.4th at p. 1195, fn. 4 ["'[t]he term "waiver" has also been used as a shorthand statement for the conclusion that a contractual right to arbitration has been lost'"].)

So the issue before us on appeal is whether the court erred by finding Elieff waived his right to have the arbitrator interpret provisions of the parties' settlement agreement for purposes of the claims asserted by Kurtin in this litigation. Given the undisputed evidence that Elieff waited until after this case was tried, a judgment was entered, an appeal was decided and the case was remanded for a partial retrial before filing his petition, we have no trouble concluding there was no error.

*3. Elieff's Waiver of the Right to Arbitrate*

In his opposition to the petition to compel arbitration, Kurtin pointed out that Elieff had previously submitted the very issues he was seeking to arbitrate to the court for adjudication in this case. Specifically, Kurtin identified Elieff's motion for summary judgment in which he asked the court to rule that: (1) Kurtin's causes of action for breach of warranty of authority failed as a matter of law because "Elieff only could

12

and did warrant his authority on behalf of and with respect to Elieff's interest in the entities in issue"; (2) Kurtin's sixth cause of action for breach of contract failed as a matter of law because "there is no causation or damages as Kurtin attained his security interest through arbitration"; and (3) Kurtin's seventh cause of action for breach of contract failed as a matter of law because "Elieff did not take distributions from the Joint Entities in breach of the Settlement Agreement and Kurtin cannot present any evidence otherwise."

Kurtin's opposition also pointed out that Elieff filed a motion in limine before the second phase of the trial, in which he argued that the court's determination in phase I that the settlement agreement "cannot be interpreted as precluding any and all distributions from being utilized for the good of the whole [Joint Entities]" meant "there can be no breach of contract by Elieff as alleged by Kurtin's Seventh Cause of Action."

The court relied upon those earlier submissions in concluding Elieff had waived his right to arbitrate those same issues. The court stated "the issues sought to be decided by arbitration were already raised by Elieff and decided. Even if they were not decided, they were raised, which is evidence of a waiver of a right to arbitrate. As set forth in the Opposition, the right to arbitrate was also waived by the bringing of a motion for summary judgment on the merits, by litigating merits issues, by litigating for six years, by conducting discovery, and by participating in trial and an appeal."

We agree these issues previously submitted to the court by Elieff himself were essentially identical to the issues he later sought to arbitrate. Specifically, Elieff's earlier summary judgment claim that "he only could and did warrant his authority on behalf of and with respect to [his own] interest in the entities in issue" equates to his proposed arbitration claim "[t]hat [he] signed the [Settlement] Agreement only for his interests and not for any third-party owners of the Joint Entities"; his earlier summary judgment claim that "there is no causation or damages as Kurtin attained his security interest through arbitration" equates to his proposed arbitration claim "that the security

13

documents Kurtin was entitled to receive would have granted him security enabling him to take Elieff's right, title and interest in the joint entities (the same right he received in the . . . June 2007 arbitration award)"; and his earlier summary judgment claim that he "did not take distributions from the Joint Entities in breach of the Settlement Agreement and Kurtin cannot present any evidence otherwise," combined with his motion in limine claim that distributions from one Joint Entity could properly be used "for the good of the whole," equated to his proposed arbitration claim that "'distributions' means profits from the joint entities as a whole."

On appeal, Elieff does not dispute that he had previously submitted the same issues he seeks to arbitrate to the court for adjudication. Instead, he argues that because the arbitration clause places "no limitations or qualifications on a party's right to arbitration," the court effectively *rewrote* the clause by making "arbitration unavailable if the parties have already litigated issues in court."

This argument conflates the *interpretation* of the arbitration clause with the analysis of whether Elieff has *waived his right* to enforce it. The clause itself says nothing at all about whether it would govern issues of contract interpretation that have already been litigated in court, and thus the court does not "rewrite" it by subjecting it to the same waiver analysis applicable to all arbitration provisions.

Elieff also argues there can be no waiver of the right to arbitrate in the absence of demonstrated prejudice. He relies on *St. Agnes, supra*, 31 Cal.4th 1187 for the proposition that merely engaging in litigation, without prejudice, does not prove waiver. But in *St. Agnes*, the court concluded no such prejudice had been established because "[t]he record . . . does not reflect that the parties *have litigated the merits or the substance of Saint Agnes's arbitrable claims*, or that any *discovery of those claims has occurred*. Nor is there any indication that PacifiCare used the Los Angeles and Fresno actions *to gain information about Saint Agnes's case* that otherwise would be unavailable in arbitration." (*Id.* at p. 1204, italics added.) Clearly, all of those things have occurred

14

here.  Kurtin's claims have been fully litigated on the merits, through both trial and an appeal, and the procedural posture of this case is effectively *mid-trial*.  The only way this case could be more litigated is if a *final* judgment had been entered.  And if the entry of a final judgment were the measure of whether the right to arbitrate had been waived, there would be no need for a waiver analysis at all.  The doctrines of res judicata and collateral estoppel would govern the issue.

Further, although Elieff acknowledges that prejudice can be established when the party seeking arbitration has "unduly delayed and waited until the eve of trial to seek arbitration" (*St. Agnes, supra*, 31 Cal.4th at p. 1204), he fails to explain how he has not done that here.  As we have already noted, Elieff initially sought court adjudication of the same issues raised in his arbitration petition by way of a motion for summary judgment in this case.  That motion was filed in November 2008, nearly *a year* before the bifurcated trial commenced in this case – and nearly *five years* before he filed his petition to arbitrate.  The appearance of undue delay is patent, and Elieff's failure to dispel it effectively concedes the point.

Finally, Elieff suggests Kurtin is "judicially estopped" from claiming that prior litigation of an issue in court effects a waiver of the right to arbitrate.  According to Elieff, Kurtin took the opposite position after the trial court had denied his motion to enforce the settlement agreement against the Joint Entities under section 664.6 on the basis they were not "parties" to the earlier litigation.  Following the denial of that motion, Kurtin petitioned for arbitration to somehow fix the "defect" in the settlement agreement which precluded enforcement of the Joint Entities' liability in the manner provided for therein – a petition Elieff interprets as an attempt to relitigate the same issue decided by the court in denying the motion.  The assertion is unpersuasive.

The doctrine of judicial estoppel "applies when '(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position

15

(i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake.'" (*Aguilar v. Lerner* (2004) 32 Cal.4th 974, 986-987.) There are several problems with Elieff's attempt to rely on the doctrine here.

First, as Kurtin points out, Elieff never claimed Kurtin had waived his right to arbitrate in connection with the earlier petition. Thus, Kurtin never had occasion to take *any* position at that point – let alone an inconsistent one – on whether or to what extent prior litigation of an issue would effect a waiver of the right to arbitrate. Second, the issue presented to the court in Kurtin's motion to enforce the settlement was not the same as the issue Kurtin sought to arbitrate. In the motion, the issue was whether the settlement agreement – as it existed – was enforceable against the Joint Entities under section 664.6. The issue Kurtin sought to arbitrate was whether his inability to enforce the agreement against the Joint Entities in the manner contemplated by the agreement was a "defect" that should be cured by amendment. Thus, Kurtin's earlier petition did not seek to arbitrate an issue that had previously been litigated, as Elieff's petition does. And third, the circumstances surrounding the two arbitration petitions are quite different. When Kurtin filed his earlier petition, there was no litigation pending in the court; his motion to enforce the settlement agreement had already been denied. Thus, unlike Elieff here, Kurtin was not seeking to insert an arbitrator into the middle of a pending case, for the specific purpose of obtaining rulings on issues already pending before the court.

For all of these reasons, we reject Elieff's reliance on judicial estoppel to defeat the trial court's finding that he waived his right to arbitrate.

16

DISPOSITION


The order is affirmed.  Kurtin is to recover his costs on appeal.



RYLAARSDAM, ACTING P. J.

WE CONCUR:


ARONSON, J.


FYBEL, J.