Filed 5/15/23  Orloff v. Weiss CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| LISA ORLOFF, Individually and as Special Administrator, etc., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> JOAN WEISS, <br><br> Defendant and Appellant. | D080535 <br><br><br> (Super. Ct. No. 37-2021-00020569-CU-NP-CTL) |


APPEAL from an order of the Superior Court of San Diego County, Ronald F. Frazier, Judge.  Reversed and remanded.

Wood, Smith, Henning & Berman LLP, Keith E. Smith and Tracy M. Lewis for Defendant and Appellant.

The Nalu Law Firm and A. Michael Nalu; Browning Hocker and Robert N. Hocker for Plaintiff and Respondent.


Joan Weiss appeals from an order denying her motion to compel arbitration of the causes of action asserted against her in the litigation filed

by Lisa Orloff (Orloff).  (Code Civ. Proc., § 1281.2.)[1]  The litigation arises from Weiss's role as a certified financial planner and investment advisor for Orloff's late mother and father, Marshall and Ann Orloff (Marshall and Ann).[2]

We conclude the trial court erred in ruling Weiss failed to establish the arbitration provisions in the agreements Marshall and Ann entered into with Lincoln Financial Advisors Corporation (Lincoln Financial) were applicable to claims asserted against her by Orloff.  Specifically, Weiss is entitled to rely upon the arbitration provisions as an agent of Lincoln Financial, and Orloff is subject to the arbitration provisions to the extent she sues in her capacity as the special administrator of her father's estate.  Moreover, with one exception, most of the claims against Weiss fall within the scope of the relevant arbitration provisions because they relate to or concern Marshall and Ann's accounts with Lincoln Financial.  We therefore reverse the order denying the motion to compel arbitration, and we remand for the trial court to consider an issue it expressly did not reach, namely, whether arbitration should be denied based on the third party litigant exception set forth in section 1281.2, subdivision (c).

I.

FACTUAL AND PROCEDURAL BACKGROUND

On May 7, 2021, in her capacity as (1) an individual, (2) a beneficiary of two trusts created by Marshall and Ann, and (3) the special administrator of Marshall's estate, Orloff filed a lawsuit against the following defendants:

---

[1]    Unless otherwise indicated, all further statutory references are to the Code of Civil Procedure.

[2]    Because of overlapping surnames and for the sake of clarity, we refer to certain individuals by their first names.  We intend no disrespect by doing so.

(1) Weiss; (2) Weiss's husband, Kenneth Weiss (Kenneth); and (3) Kenneth's professional corporation.

Orloff alleged that she is one of six children of Marshall and Ann, both of whom were successful physicians. Marshall died in 2018, at the age of 91, and Ann died in 2019, at the age of 93. During their lifetimes, Marshall and Ann created the Orloff Family Trust Dated October 3, 1991 ("the Family Trust") and the Orloff Irrevocable Trust Number One Dated October 5, 2001 (collectively "the Trusts"), designating their children as the beneficiaries of the Trusts.

The complaint alleged that Weiss "is a Certified Financial Planner and FINRA licensed registered representative, holding Series 7 and Series 63 securities licenses."[3] Kenneth is a certified public accountant. According to the complaint, "for many years" Weiss "served as Marshall's and Ann's

---

[3] To understand this allegation regarding Weiss's professional qualifications, some context is required. FINRA refers to the Financial Industry Regulatory Authority, which is a " ' "self-regulatory organization" ' as defined in the Securities Exchange Act of 1934 that oversees the conduct of securities brokers and brokerage firms." (*Lickiss v. Financial Industry Regulatory Authority* (2012) 208 Cal.App.4th 1125, 1128.) As explained by one treatise, "[I]n order to be what we commonly think of as a stock broker, a customer representative, or an account executive, an individual must be registered with FINRA as a registered representative. In order to qualify as a registered representative, an individual must have a sponsoring broker dealer. A registered representative is not permitted to engage in transactions other than for the sponsoring firm without the consent of the firm. [¶] Registered representative status requires passing FINRA's Series 7 and Series 63 securities licensing exams. These exams are administered by FINRA. The Series 7 license allows the registered representative to buy and sell stocks, mutual funds, options, municipal securities and some variable contracts for their clients. The Series 63 license allows the representative to trade variable annuities and unit investment trusts." (5 Hazen, Treatise on the Law of Securities Reg. (7th ed. 2020) FINRA Reg. of Associated Persons, § 14:67, fns. omitted.)

financial advisor," and Kenneth "served as Marshall's and Ann's tax advisor and preparer." The complaint alleged that, at some point, "[Weiss] and Kenneth replaced Marshall's and Ann's children as successor trustee" of the Trusts.[4] Against both Weiss and Kenneth, the complaint alleged breach of fiduciary duty, professional negligence and financial elder abuse. (Welf. & Inst. Code, § 15610.30.)[5]

The complaint set forth a series of alleged wrongful acts by both Weiss and Kenneth. With respect to Weiss, the complaint alleged that she (1) advised Marshall and Ann to purchase investments and insurance products that were inappropriate for them with the goal of maximizing her fees; (2) charged exorbitant fees; (3) convinced Marshall and Ann to make Kenneth or alternatively herself the successor trustee for the Trusts for the purpose of obtaining additional fees; and (4) failed to properly process the beneficiary designation paperwork for annuities after Marshall's death, resulting in an unnecessary probate action. With respect to Kenneth, the complaint alleged that he (1) improperly advised and prepared Marshall's and Ann's taxes, resulting in multiple audits; (2) overcharged for trustee and accounting services; (3) as trustee, continued to pay inflated fees to Weiss for

---

[4] The complaint alleged that "[t]he purpose and intent of [Weiss] and Kenneth in making this change to insert themselves as successor trustee was to obtain fees and payments from the Estate after Marshall and Ann died." (Underscoring omitted.) Further, "[b]y inserting themselves as successor trustee, [Weiss] and Kenneth guaranteed that upon Marshall's death the children could not remove [Weiss] as [certified financial planner] and Kenneth as the Trusts' accountant."

[5] The causes of action for professional negligence and financial elder abuse were asserted against both Kenneth and his professional corporation.

investment advice; and (4) as trustee, improperly accounted for trust assets and failed to timely distribute trust assets and fund certain subtrusts.[6]

On June 22, 2021, Weiss filed a motion to compel arbitration of all of the causes of action alleged against her. (§ 1281.2.) As Weiss stated in her declaration in support of the motion, she has been a registered representative of Lincoln Financial since approximately 1988, and in that capacity, she provides clients with financial planning and investment advisory services. Weiss explained that she served as an investment advisor to Marshall and

---

[6]    On August 31, 2021, while the motion to compel arbitration was pending, but before Orloff filed an opposition thereto, Orloff amended the complaint to add causes of action alleging that Weiss aided and abetted Kenneth's breach of fiduciary duty, and that Kenneth aided and abetted Weiss's breach of fiduciary duty. Strangely, however, the first amended complaint also omitted the cause of action for breach of fiduciary duty against Kenneth. Although the record reflects no objection by Weiss in the trial court to the filing of the first amended complaint, in her appellate reply brief, Weiss argues that we should not consider the allegations of that complaint in determining whether the trial court properly denied the motion to compel arbitration because "[t]here is no evidence in the record establishing [Orloff] had authority to file a [first amended complaint], given [Weiss] had already appeared." The argument is forfeited because it was not raised below. (See *Leshane v. Tracy VW, Inc.* (2022) 78 Cal.App.5th 159, 166, fn. 2.) It also lacks substantive merit. Section 472, subdivision (a) provides that "[a] party may amend its pleading once without leave of the court at any time before the *answer*, *demurrer*, or *motion to strike* is filed, or after a demurrer or motion to strike is filed but before the demurrer or motion to strike is heard if the amended pleading is filed and served no later than the date for filing an opposition to the demurrer or motion to strike." (Italics added.) Under the plain text of this provision, the filing of a motion to compel arbitration does not preclude the filing of an amended pleading because such a filing is not an answer, demurrer, or motion to strike. Moreover, even if a motion to compel arbitration was somehow equivalent to a demurrer or a motion to strike within the meaning of section 472, subdivision (a), the first amended complaint here would still be proper because it was filed *prior* to the date for filing an opposition.

5

Ann from 2001 until their deaths. Weiss's declaration attached a series of customer agreements between Lincoln Financial and Marshall and Ann, both individually and on behalf of the Family Trust. Several of those agreements included arbitration provisions. Weiss signed the agreements as a registered representative of Lincoln Financial, certifying that she was a registered representative on the relevant account and that the account holder's identification documents had been verified.[7]

Two different arbitration provisions appear in the agreements. First, in three account holder agreements entered into by Marshall and Ann with Lincoln Financial in 2006 and 2008, the arbitration provision states: "All controversies that may arise between us (including, but not limited to controversies concerning any [a]ccount, order or transaction, or the continuation, performance, interpretation or breach of this or any other agreement between us, whether entered into or arising before, on or after the date this [a]ccount is opened) shall be determined by arbitration . . . ."[8]

---

[7]    For three of the agreements, the pages containing Weiss's signature were not submitted in their entirety, so that only some of each page can be read. However, Weiss's declaration confirms that she signed those documents as a registered representative of Lincoln Financial. We may rely on Weiss's declaration to establish that she signed the agreements as a registered representative of Lincoln Financial. (See *Sprunk v. Prisma LLC* (2017) 14 Cal.App.5th 785, 793 [because Rule 3.1330 of the California Rules of Court permit a party moving to compel arbitration to state the terms of the relevant agreement verbatim rather than to attach a copy of the agreement, it was sufficient for the moving party to attach the two relevant arbitration provisions and to state that all class members had signed at least one of them].)

[8]    In the 2006 agreements, the arbitration is to be "in accordance with the rules then prevailing of the New York Stock Exchange, Inc., or the NASD, Inc., as I may designate." (Bolding omitted.) In the 2008 agreement, the

6

(Bolding omitted.)  Second, in 2012, Marshall and Ann individually, and on behalf of the Family Trust, entered into three "Client Profile" agreements, each of which contained an arbitration provision that applied to "all accounts established in conjunction with this Client Profile."  The arbitration provision in each of those three agreements states, "It is agreed that any controversy arising out of or relating to the accounts established herewith, shall be submitted to arbitration in accordance with the rules adopted by the Financial Industry Regulatory Authority, Inc. Dispute Resolution Board." (Bolding omitted.)

Weiss's motion argued that the causes of action against her were covered by the arbitration provisions she attached to her declaration because "[Marshall and Ann] agreed to arbitrate 'any controversy' arising out of or relating to the accounts established by the parties.  Specifically, [Orloff's] causes of action for breach of fiduciary [duty] and professional negligence, relate to alleged breaches of the broker/dealer and financial advisor relationships established among the parties.  Similarly, [Orloff's] cause of action for financial elder abuse relates to the fees charged for financial planning services and in connection with transactions and investments executed for [Marshall and Ann]."

In opposition, Orloff argued, among other things, that neither she (as the daughter of Marshall and Ann) nor Weiss (in her individual capacity) were parties to the agreements that contain the arbitration provisions.  With respect to Weiss, Orloff argued that "[Weiss] is not a party to these [arbitration] agreements, and she admits that she signed them only as a representative of Lincoln Financial."  Orloff contended that, therefore, the

---

arbitration is to be "in accordance with the rules then prevailing of the NASD, Inc. or any successor."  (Bolding omitted.)

7

trial court "should deny the motion to compel arbitration on the basis that there is no arbitration clause to enforce between these parties."  Orloff also argued that because of the claims against Kenneth, the motion to compel arbitration should be denied pursuant to section 1281.2, subdivision (c), which allows the trial court to refuse to compel arbitration if "[a] party to the arbitration agreement is also a party to a pending court action . . . with a third party, arising out of the same transaction or series of related transactions and there is a possibility of conflicting rulings on a common issue of law or fact."  (§ 1281.2, subd. (c).)

In Weiss's reply, under a heading stating that "[Weiss] is a signatory and party to the arbitration agreement *as an agent* of Lincoln Financial" (bolding and capitalization omitted, italics added), Weiss cited case law for the proposition that "[w]here a defendant is not a signatory to an arbitration provision, *but was acting as an agent* for the corporation, it is entitled to the benefits of the arbitration provision."  (Italics added.)  Among other things, Weiss also argued that the claims against Kenneth did not support the trial court's exercise of its discretion to deny arbitration under section 1281.2, subdivision (c).

The trial court denied the motion to compel arbitration.  It ruled that Weiss had established neither that she was entitled to enforce the arbitration provisions, nor that Orloff was subject to them.  In addition, the trial court stated that it did "not appear" that Orloff's "tort-based claims for breach of fiduciary duty, professional negligence, and elder abuse" were within the scope of the relevant arbitration provisions.  The trial court expressly did not reach the issue of whether the claims against Kenneth would justify the denial of the motion to compel arbitration pursuant to section 1281.2, subdivision (c).

8

Weiss appeals from the order denying her motion to compel arbitration. (§ 1294, subd. (a) [appealability of an order denying a petition to compel arbitration].)

II.

DISCUSSION

A.    *Applicable Legal Principles*

In light of the grounds on which the trial court relied in denying the motion to compel arbitration, two fundamental issues arise for our review on appeal.  First, we must consider whether, as Weiss contends, arbitration should be compelled because both she and Orloff are subject to the arbitration provisions in the agreements that Marshall and Ann entered into with Lincoln Financial.  Second, in the event we conclude that Orloff and Weiss are subject to the arbitration provisions, we must consider the extent to which Orloff's claims against Weiss fall within the scope of those provisions.

Our review of the order denying the motion to compel arbitration is guided by well-settled principles.  " 'A party to an arbitration agreement may petition the court to compel other parties to arbitrate a dispute that is covered by their agreement.' [Citations.]  'California has a strong public policy in favor of arbitration as an expeditious and cost-effective way of resolving disputes.' [Citations.]  'Even so, parties can only be compelled to arbitrate when they have agreed to do so.  [Citation.]  "Arbitration . . . is a matter of consent, not coercion." ' [Citations.]  [¶]  'Whether an agreement to arbitrate exists is a threshold issue of contract formation and state contract law.' " (*Cohen v. TNP 2008 Participating Notes Program, LLC* (2019) 31 Cal.App.5th 840, 858-859 (*Cohen*).)

9

With respect to the issue of whether Orloff and Weiss are bound by the arbitration provisions in the agreements that Marshall and Ann entered into with Lincoln Financial, " '[t]he party seeking to compel arbitration bears the burden of proving the existence of a valid arbitration agreement.' [Citations.] [¶] ' "Whether an arbitration agreement is binding on a third party (e.g., a nonsignatory) is a question of law subject to de novo review." ' " (*Cohen*, *supra*, 31 Cal.App.5th at p. 859.)

In considering the extent to which Orloff's claims against Weiss fall within the scope of any applicable arbitration provisions, "[o]nce the existence of a valid arbitration clause has been established, '[t]he burden is on "the party opposing arbitration to demonstrate that [the] arbitration clause *cannot* be interpreted to require arbitration of the dispute." ' " (*McIsaac v. Foremost Ins. Co. Grand Rapids, Michigan* (2021) 64 Cal.App.5th 418, 422.) Moreover, "the '*question of arbitrability*,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.' " (*Howsam v. Dean Witter Reynolds, Inc.* (2002) 537 U.S. 79, 83; see also *Nelson v. Dual Diagnosis Treatment Center, Inc.* (2022) 77 Cal.App.5th 643, 654 (*Nelson*) [" 'Under California law, it is presumed the judge will decide arbitrability, unless there is clear and unmistakable evidence the parties intended the arbitrator to decide arbitrability.' "].) Here, the issue of arbitrability is for the court to decide because the arbitration provisions do not clearly and unmistakably show that the parties intended the arbitrator to decide that issue. On appeal, because the parties do not point to any conflicting extrinsic evidence, we apply a de novo standard of review when addressing the issue of arbitrability. (*Ahern v. Asset Management Consultants, Inc.* (2022) 74 Cal.App.5th 675, 687 [" ' "Whether an arbitration agreement applies to a controversy is a question of law to

which the appellate court applies its independent judgment where no conflicting extrinsic evidence in aid of the interpretation was introduced in the trial court." ' "].)

Weiss argues at length that the Federal Arbitration Act (FAA; 9 U.S.C. § 1 et seq.) applies to Orloff's claims against her. However, we need, and do not, consider that issue to resolve this appeal. The threshold issue of whether the parties entered into an agreement to arbitrate "is answered by applying state contract law even when it is alleged that the agreement is covered by the FAA." (*Cheng-Canindin v. Renaissance Hotel Associates* (1996) 50 Cal.App.4th 676, 683.) Similarly, " '[w]hen deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." (*Nelson, supra*, 77 Cal.App.5th at p. 654.) "Under both California and federal law, arbitration is strongly favored and any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." (*Balandran v. Labor Ready, Inc.* (2004) 124 Cal.App.4th 1522, 1527.)

B. *The Trial Court Erred in Concluding that Weiss and Orloff Were Not Subject to the Arbitration Provisions in the Agreements That Marshall and Ann Entered Into With Lincoln Financial*

We now turn to the issue of whether Weiss met her burden, as the moving party, to establish that both she and Orloff are subject to the arbitration provisions in the agreements that Marshall and Ann entered into with Lincoln Financial.

11

1. *Orloff Is Subject to the Arbitration Provisions to the Extent She Is Suing as the Special Administrator of Marshall's Estate*

We first consider whether Orloff is subject to the relevant arbitration provisions.[9] There is no dispute that Orloff was not a party to the agreements between her parents and Lincoln Financial. "Because arbitration is a matter of contract, generally ' "one must be a party to an arbitration agreement to be bound by it or invoke it." ' " (*DMS Services, LLC v. Superior Court* (2012) 205 Cal.App.4th 1346, 1352 (*DMS*).) However, there are exceptions to the general rule. (*Id.* at p. 1353.) These exceptions include " ' " "(a) incorporation by reference; (b) assumption; (c) agency; (d) veil-piercing or alter ego; (e) estoppel; and (f) third-party beneficiary.' " ' " (*Cohen, supra*, 31 Cal.App.5th at p. 859.) In *Thomas v. Westlake* (2012) 204 Cal.App.4th 605 (*Thomas*), we discussed another exception that is relevant here. Specifically, "[a] decedent's successor in interest steps into the decedent's position as to a particular action. [Citation.] 'Thus, where [a decedent's successor in interest] asserts a claim on behalf of the estate, he or she must also abide by the terms of any valid agreement, including an arbitration agreement, entered into by the decedent.' " (*Id.* at p. 613, fn. 5.)

Here, Orloff specifically identified three different capacities in which she filed suit against Weiss: (1) in her individual capacity; (2) as a beneficiary of the Trusts; and (3) as the special administrator of Marshall's estate. With respect to the claims brought in her capacity as the special

---

[9] We note that, in the trial court, Orloff placed heavy emphasis on the argument that she was not subject to the arbitration provisions between her parents and Lincoln Financial. The trial court apparently found merit to her argument. On appeal, however, although Weiss argues the issue of whether Orloff is subject to the arbitration provisions, Orloff does not. As Orloff simply fails to reach the issue rather than expressly conceding that she is subject to the arbitration provisions, we will proceed to analyze the issue.

administrator of Marshall's estate, no further analysis is needed to conclude that Orloff is subject to the arbitration provisions that Marshall entered into with Lincoln Financial. In her capacity as special administrator of Marshall's estate, Orloff is subject to the arbitration provisions that Marshall agreed to because she has brought suit as Marshall's successor in interest, asserting claims on behalf of Marshall's estate. (*Thomas, supra,* 204 Cal.App.4th at p. 613, fn. 5.)

However, with respect to the claims that Orloff brings in her individual capacity and as a beneficiary of the Trusts, Weiss has failed to meet her burden as the moving party to identify any viable theory under which Orloff could be bound by the arbitration provisions that her parents entered into with Lincoln Financial. Contending that "a decedent may bind his/her heirs['] claims to resolution via arbitration," Weiss cites *Ruiz v. Podolsky* (2010) 50 Cal.4th 838. However, *Ruiz* is inapposite because it applied a particular statute, section 1295, that specifically governs the arbitration of medical malpractice claims. *Ruiz* concluded that an heir who brings a medical malpractice claim is bound by an arbitration clause signed by the decedent that purports to bind the decedent's heirs. (*Ruiz*, at p. 849 [holding that "section 1295, construed in light of its purpose, is designed to permit patients who sign arbitration agreements to bind their heirs in wrongful death actions"].) This action does not involve medical malpractice. Moreover, *Ruiz* does not support Weiss's argument for a second reason. In *Ruiz* the relevant agreement *expressly stated* that the arbitration provision applied to the "spouse or heirs of the patient and any children." (*Id.* at pp. 841-842.) The issue was whether the decedent had the authority to *expressly* bind heirs in that manner. (*Ibid.*) Here, in contrast, the relevant arbitration provisions

13

contain no language purporting to bind Marshall and Ann's heirs to any agreement to arbitrate claims with Lincoln Financial.

### 2. *Weiss May Invoke the Arbitration Provisions as an Agent of Lincoln Financial*

We next consider whether Weiss is entitled to invoke the arbitration provisions in the agreements she signed as a registered representative of Lincoln Financial. Weiss contends that she is entitled to invoke those provisions because she acted as an agent of Lincoln Financial in her dealings with Marshall and Ann.

At the threshold, we must address Orloff's contention that Weiss has forfeited her ability to argue, in the context of this appeal, that she is entitled to invoke the arbitration provisions because she acted as an agent of Lincoln Financial. Orloff contends that Weiss did not make the agency argument in the trial court, and thus she may not make it for the first time on appeal. We reject Orloff's argument because we disagree with Orloff's characterization of the record. Although Weiss's briefing in the trial court on the issue of agency was not extensive or well developed, our review of the record shows that Weiss did raise the issue of agency. Specifically, Weiss's reply memorandum contained a heading stating that "[Weiss] is a signatory and party to the arbitration agreement *as an agent* of Lincoln Financial" (bolding and capitalization omitted, italics added). Under that heading, Weiss cited case law for the proposition that "[w]here a defendant is not a signatory to an arbitration provision, *but was acting as an agent* for the corporation, it is entitled to the benefits of the arbitration provision." (Italics added.) The issue has accordingly been preserved for appeal.

Turning to the merits, we note as an initial matter that even though Weiss's signature appears on the agreements that Marshall and Ann entered into with Lincoln Financial, she is not a party to those agreements. Instead,

14

she signed as an agent of Lincoln Financial. (*Ronay Family Limited Partnership v. Tweed* (2013) 216 Cal.App.4th 830, 837 (*Ronay*) [the financial advisor who signed an account agreement as a "registered representative" of a broker-dealer was not a party to the agreement between the broker-dealer and the clients of the registered representative, but rather signed as an agent of the broker-dealer].) Thus, Weiss may not invoke the arbitration provisions in those agreements unless she can establish an exception to the general rule that only a party to an arbitration agreement may enforce it. (*DMS*, *supra,* 205 Cal.App.4th at p. 1353.)

Weiss relies on the exception available to someone who is not a party to an agreement but who is an agent of one of the signatories. "California law permits a nonsignatory defendant to compel a signatory plaintiff to arbitrate where there is a connection between the claims alleged against the nonsignatory and its agency relationship with a signatory. . . . A connection between the causes of action alleged against the nonsignatory and that party's agency relationship to a signatory makes it equitable to allow the nonsignatory to enforce the arbitration provision against a signatory plaintiff." (*Cohen*, *supra*, 31 Cal.App.5th at pp. 863-864.) Based on that exception, this court has held that a registered representative is an agent of its sponsoring broker-dealer with respect to the investment advisory services the registered representative provides to clients. (*Ronay*, *supra,* 216 Cal.App.4th at p. 838.) That agency relationship entitles the registered representative to invoke the arbitration provisions in an agreement between the registered representative's clients and the registered representative's broker-dealer. (*Ibid*.) Other authorities are in accord. (See, e.g., *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (3d Cir. 1993) 7 F.3d 1110, 1121-1122 [a financial consultant employed by a brokerage firm was entitled to

15

invoke the arbitration provision in an agreement between the brokerage firm and the financial consultant's client]; *Letizia v. Prudential Bache Securities, Inc.* (9th Cir. 1986) 802 F.2d 1185, 1188 [an account executive of a brokerage firm could invoke the arbitration provision in the customer agreement between the brokerage firm and the plaintiff when plaintiff alleged that the account executive acted improperly with respect to investment services]; *Berman v. Dean Witter & Co., Inc.* (1975) 44 Cal.App.3d 999, 1001 [an agent of a securities broker who handled the transaction made to the plaintiff's account was covered by the arbitration provision in the customer agreement between the plaintiff and the securities broker].)

Here, it is undisputed that Weiss was a registered representative of Lincoln Financial, and in that capacity she acted as an investment advisor to Marshall and Ann. Accordingly, Weiss was an agent of Lincoln Financial in her dealings with Marshall and Ann, and she is entitled to invoke the arbitration provisions with respect to any claims against her that are connected to the investment advisory services she provided to Marshall and Ann through her role as a registered representative of Lincoln Financial. (*Cohen*, *supra*, 31 Cal.App.5th at pp. 863-864 [requiring "*a connection* between the claims alleged against the nonsignatory and its agency relationship with a signatory" (italics added)].)

In sum, we conclude that the trial court erred in denying the motion to compel arbitration on the ground that neither Orloff or Weiss were subject to the arbitration provisions in the agreements that Marshall and Ann entered into with Lincoln Financial. The trial court should have concluded that Weiss met her burden to establish that (1) Orloff is subject to the arbitration provisions for those claims brought in her capacity as the special administrator of Marshall's estate; and (2) Weiss is subject to the arbitration

16

provisions due to her role as an agent of Lincoln Financial to the extent the claims against her are connected to the services she provided to Marshall and Ann as an agent of Lincoln Financial.

C.  *Most, but Not All, of the Claims Alleged Against Weiss Fall Within the Scope of the Arbitration Provisions*

Having concluded that both Weiss (as an agent of Lincoln Financial) and Orloff (in her capacity as special administrator of Marshall's estate) are subject to the arbitration provisions in the agreements Marshall and Ann entered into with Lincoln Financial, we must consider whether Orloff's claims against Weiss in this action fall within the scope of those arbitration provisions.

As we have described, the 2006 and 2008 arbitration provisions state that "[a]ll controversies that may arise between us (including, but not limited to controversies *concerning* any [a]ccount, order or transaction, or the continuation, performance, interpretation or breach of this or any other agreement between us, whether entered into or arising before, on or after the date this [a]ccount is opened) shall be determined by arbitration . . . ." (Italics added; bolding omitted.)  The 2012 arbitration provisions state that "any controversy *arising out of or relating to* the accounts established herewith, shall be submitted to arbitration . . . ."  (Italics added; bolding omitted.)  Arbitration provisions, such as these, that refer to claims "concerning" or "arising out of or relating to" the accounts are typically described as "broad" provisions.  (See *Johnson v. Greenelsh* (2009) 47 Cal.4th 598, 601, fn. 3 [arbitration provision "applicable to '[a]ny and all disputes' between trustees or beneficiaries, 'concerning any property owned by any trust(s) or the operation of any trust created herein' "was a "broad" provision]; *Khalatian v. Prime Time Shuttle, Inc.* (2015) 237 Cal.App.4th 651, 659 ["The language 'arising out of or relating to' as used in the parties'

17

arbitration provision is generally considered a broad provision."].) " 'It has long been the rule in California that a *broadly worded* arbitration clause . . . may extend to tort claims that may arise under or from the contractual relationship. "There is no requirement that the cause of action arising out of a contractual dispute must be itself contractual. At most, the requirement is that *the dispute* must arise out of contract." ' " (*Rice v. Downs* (2016) 248 Cal.App.4th 175, 186, first italics added.)[10]

Weiss contends that "all of the causes of action pled against [Weiss] fall within the scope of the Arbitration Provisions because they [all] stem from [Weiss's] alleged mismanagement of [Marshall and Ann's] Lincoln [Financial] accounts."[11] On their face, the broad arbitration provisions at issue here

---

[10] Because the arbitration provisions at issue here are broadly worded provisions, the trial court erred in ruling that Orloff's "tort-based claims" were not within the scope of the provisions. Notably, Orloff did not advocate in the trial court for such a rule, and she does not do so on appeal.

[11] At certain points in Weiss's appellate briefing, Weiss fails to distinguish the claims that Orloff asserts against Weiss from the claims that Orloff asserts against Kenneth. For example, Weiss states in the introduction to her opening appellate brief that "*all* of the claims set forth in the Complaint stem from the Lincoln [Financial] accounts" and are therefore subject to arbitration. (Italics added.) Similarly, the argument heading in her opening appellate brief states that "[t]he arbitration provision encompasses all claims asserted in [Orloff's] complaint." (Initial capitalization and underscoring omitted.) If, by making such statements, Weiss intends to assert that Orloff's claims against *Kenneth* are subject to the arbitration provisions in the agreements that Marshall and Ann entered into with Lincoln Financial, Weiss has not set forth any support for that position. The complaint makes clear that the claims against Kenneth are based primarily on his services as Marshall and Ann's accountant and as trustee for the Trusts. Weiss has not explained how the arbitration provisions that Marshall and Ann agreed to with Lincoln Financial might cover Kenneth's provision of accounting and trustee services. Specifically, Kenneth does not

18

cover all claims *relating to* or *concerning* Marshall and Ann's accounts with Lincoln Financial. Orloff does not dispute that her claims against Weiss fall within the scope of the relevant arbitration provisions *to the extent those claims are connected to Weiss's actions as the registered representative for the Lincoln Financial accounts.* However, Orloff argues that *not all* of her claims against Weiss relate to Weiss's role at Lincoln Financial.

Specifically, Orloff points to her claim that Weiss aided and abetted Kenneth's breach of his *own* fiduciary duty as trustee of the Trusts. In this regard, the first amended complaint alleges that "[Weiss] knew of Kenneth's misconduct and made a conscious decision to participate and assist in Kenneth's tortious activity." Orloff argues that this claim against Weiss does not relate to or concern Weiss's management of Marshall and Ann's Lincoln Financial accounts, and thus it is not within the scope of the relevant arbitration provisions. Weiss's only response to this argument is that the trial court should not have allowed Orloff to file the first amended complaint in which the allegation appears. However, as we have explained, Weiss's belated challenge to the filing of the first amended complaint lacks merit. (See fn. 6, *ante.*)

We perceive no basis on which to conclude that Weiss could have been acting within the scope of her agency as a registered representative of Lincoln Financial when she allegedly aided and abetted Kenneth in breaching his own fiduciary duty. Accordingly, we conclude that Orloff may not be ordered to arbitrate the claim that Weiss aided and abetted Kenneth's breach of fiduciary duty. However, as Orloff does not dispute that the

---

appear to have been an agent of Lincoln Financial, and his accounting and trustee services do not appear to have concerned or related to any Lincoln Financial accounts.

19

remainder of the claims against Weiss concern or relate to Marshall and Ann's accounts with Lincoln Financial, we conclude that those claims fall within the scope of the relevant arbitration provisions.

D.  *Remand Is Required For the Trial Court to Consider Whether to Refuse to Compel Arbitration Based on Section 1281.2, Subdivision (c)*

One last issue remains for us to consider.  In opposition to the motion to compel arbitration, Orloff argued that even if the trial court determined that there were arbitrable issues raised in her lawsuit against Weiss, because of the pending claims against Kenneth, the motion to compel arbitration should be denied pursuant to section 1281.2, subdivision (c).  The trial court expressly declined to reach the issue.  On appeal, Orloff contends that we should apply section 1281.2, subdivision (c) to affirm the trial court's order denying the motion to compel arbitration.  In the alternative, Orloff argues that we should remand for the trial court to consider whether to deny the motion to compel pursuant to section 1281.2, subdivision (c).[12]

"Under section 1281.2[, subdivision] (c), a court may stay or refuse to compel arbitration of all or part of an arbitrable controversy when:  (1) '[a] party to the arbitration agreement is also a party to a pending court action . . . with a third party, arising out of the same transaction or series of related transactions,' and (2) 'there is a possibility of conflicting rulings on a common issue of law or fact.'  (§ 1281.2[, subd.] (c).)  For purposes of the statute, a third party is one who is neither bound by nor entitled to enforce the arbitration agreement.  [Citation.]  Section 1281.2[, subdivision] (c) ' "addresses the peculiar situation that arises when a controversy also affects claims by or against other parties not bound by the arbitration agreement." ' "

---

[12]  Although Orloff raised the issue of section 1281.2, subdivision (c) in her respondent's brief, Weiss neglected to address the issue in her reply brief.

20

(*Daniels v. Sunrise Senior Living, Inc.* (2013) 212 Cal.App.4th 674, 679-680 (*Daniels*).) Orloff argues that her claims against Kenneth meet the requirements for the application of section 1281.2, subdivision (c) because at least some of them concern the same transactions as her claims against Weiss, giving rise to the possibility of inconsistent rulings.

The question of whether to deny arbitration pursuant to section 1281.2, subdivision (c) is a matter committed, in the first instance, to the discretion of the trial court, with our role as an appellate court limited to determining whether the trial court has abused its discretion. (*Daniels, supra,* 212 Cal.App.4th at p. 680 ["the ultimate determination whether to stay or deny arbitration based on the possibility of conflicting rulings on common questions of law or fact is reviewed for an abuse of discretion"].) Therefore, because the trial court has not yet addressed Orloff's argument that Weiss's motion to compel arbitration should be denied based on section 1281.2, subdivision (c), we will remand this matter to the trial court to consider that issue, as well as to make any other orders consistent with this opinion.[13]

---

[13] Despite Weiss's contention that the arbitration between her and Orloff is governed by the FAA, the trial court may nevertheless apply the California procedural rule set forth in section 1281.2, subdivision (c). A court is precluded from considering whether to apply section 1281.2, subdivision (c) only when an arbitration provision " '*expressly* designate[s] that any arbitration proceeding should move forward under the FAA's procedural provisions rather than under state procedural law.' " (*Los Angeles Unified School Dist. v. Safety National Casualty Corp.* (2017) 13 Cal.App.5th 471, 482.) As the arbitration provisions in the agreements that Marshall and Ann entered into with Lincoln Financial "do[ ] not even mention the FAA, much less expressly adopt its procedural rules" (*Avila v. Southern California Specialty Care, Inc.* (2018) 20 Cal.App.5th 835, 841), there is no bar to applying section 1281.2, subdivision (c).

DISPOSITION

The order denying the motion to compel arbitration is reversed.  This matter is remanded to the trial court for proceedings consistent with this opinion.  The parties shall bear their own costs on appeal.


IRION, J.

WE CONCUR:



McCONNELL, P. J.



DO, J.