Filed 1/10/24  Sorenson v. The Hwood Group CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| CHELSEA SORENSON, | B324619 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 21STCV41169) |
| v. | |
| THE HWOOD GROUP, LLC, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Steven J. Kleifield, Judge.  Affirmed.

Bremer Whyte Brown & O'Meara, Jeremy S. Johnson, Benjamin L. Price, and Jonathan P. Cothran for Defendant and Appellant.

Carpenter & Zuckerman, John P. Kristensen, and Frank M. Mihalic, Jr., for Plaintiff and Respondent.

_____

# INTRODUCTION

In 2017, plaintiff and respondent Chelsea Sorenson began working for West Beverly Group, LLC, doing business as The Peppermint Club (The Peppermint Club). As a condition of her employment with The Peppermint Club, Sorenson signed an arbitration agreement in which she agreed to arbitrate any disputes arising out of or related to her employment or the termination of her employment. Sorenson's employment with The Peppermint Club later ended. In 2020, Sorenson began working for Sunset Hotel F&B, doing business as Harriet's Rooftop (Harriet's Rooftop). Both Harriet's Rooftop and The Peppermint Club are subsidiaries of defendant and appellant The Hwood Group, LLC (Hwood). In this action against Hwood, Sorenson alleges claims solely arising out of her employment with Harriet's Rooftop. The trial court denied Hwood's motion to compel arbitration of Sorenson's claims. We conclude the trial court did not err in denying the motion to compel arbitration because Sorenson's claims do not fall within the express scope of the arbitration agreement. We accordingly affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.  Arbitration agreement with The Peppermint Club

Hwood owns food and beverage businesses throughout the southwestern United States. It is the parent company of various corporate entities that operate restaurants, bars, and nightclubs in the Los Angeles area. Two of Hwood's subsidiaries are The Peppermint Club and Harriet's Rooftop.

Sorenson began working for The Peppermint Club in 2017. On September 2, 2017, Sorenson and The Peppermint Club entered into a "Pre-Dispute Resolution/Arbitration Agreement"

2

(Arbitration Agreement).  Neither Hwood nor Harriet's Rooftop is a signatory to the agreement.

The Arbitration Agreement provides in relevant part:  "As a condition of and in consideration for my employment and/or continued employment with West Beverly Group, LLC, dba The Peppermint Club, as set forth in more detail below, I (including my heirs, administrators, successors and assigns, hereinafter also referred to as 'Employee') ***waive my right to a jury trial*** and agree that disputes relating to my employment, or the termination of such employment, The Peppermint Club and its owners, officers, current or former employees, agents, parent, subsidiaries, predecessors and affiliates, successors or assigns (hereinafter 'the Company') shall be decided by a mutually agreed-upon Arbitrator in final and binding individual arbitration in accordance with the Federal Arbitration Act, 9 U.S.C. § l, et seq.  Similarly, as set forth in this Agreement, the Company shall bring claims against me in arbitration rather than in court.  [¶] . . . Any dispute, claim or controversy including, but not limited to, any dispute, claim or controversy seeking compensatory and/or punitive damages ('claims'), arising out of or relating to Employee's employment or the cessation of such employment with the Company, shall be submitted to final and binding arbitration."

Due to the COVID-19 pandemic, Hwood experienced a significant interruption in its business and decided to lay off nearly its entire affiliated workforce.  While the record does not disclose whether Sorenson was included in these layoffs, her employment with The Peppermint Club ended at some point in 2020.

3

## II. Lawsuit against Hwood

Sorenson was hired to work at Harriet's Rooftop as a server in August 2020. Because Harriet's Rooftop serves food, it was allowed to reopen during the pandemic before many of Hwood's other businesses. Sorenson was furloughed in November 2020, and although Harriet's Rooftop later rehired other employees, it did not rehire Sorenson.

On November 8, 2021, Sorenson filed a civil action against Hwood and unnamed Doe defendants. Her complaint alleged causes of action for retaliation in violation of Labor Code sections 1102.5 and 98.6, illegal tip pools in violation of Labor Code section 351, and unfair business practices in violation of Business and Professions Code section 17200 et seq. The gravamen of the complaint was that the defendants furloughed Sorenson and refused to rehire her in retaliation for complaints that she made to government and law enforcement agencies about legal violations committed by Harriet's Rooftop, including illegal tip pool practices, breaches of COVID-19 rules and regulations, and unlawful serving of alcohol.

Sorenson did not name The Peppermint Club as a party in the action, and none of the allegations in the complaint concern her prior employment with The Peppermint Club.

## III. Hwood's motion to compel arbitration

On April 4, 2022, Hwood filed a motion to compel Sorenson to arbitrate her claims based on her Arbitration Agreement with The Peppermint Club. Hwood argued that Sorenson's claims were subject to arbitration because they arose out of her employment with Harriet's Rooftop, which was an affiliated company of The Peppermint Club. Hwood also asserted that it could enforce the Arbitration Agreement as a third party

4

beneficiary because it was the parent company of both The Peppermint Club and Harriet's Rooftop.

Sorenson opposed the motion to compel arbitration. She contended that her claims were not subject to arbitration because they were based solely on her employment with Harriet's Rooftop, not The Peppermint Club, and she never agreed to arbitrate any claims arising from her employment with Harriet's Rooftop. She also argued that Hwood was not entitled to enforce the Arbitration Agreement because it was not a signatory to the agreement, and none of the exceptions allowing enforcement by a nonsignatory applied.

The trial court denied the motion on the ground that Sorenson's claims against Hwood were not covered by the Arbitration Agreement. The court explained: "By its terms the arbitration agreement was a condition of and in consideration for her employment and/or continued employment with West Beverly Group, LLC, dba The Peppermint Club. While any claim arising out of such term of employment . . . was subject to arbitration with West Beverly Group or any of the other entities, that term of employment ended at some point in 2020. Plaintiff began a new term of employment with Sunset Hotel F&B, LLC dba Harriet's Rooftop in or about August 2020. Her claim arises out of the termination of that employment, and not her prior employment with West Beverly Group."

The trial court noted that interpretation of the Arbitration Agreement was "made more difficult by the awkward language of the first sentence," which appeared to be missing the word "with" between "employment" and "The Peppermint Club" ("I . . . agree that disputes relating to my employment, or the termination of such employment, The Peppermint Club and its owners, officers,

current or former employees, agents, parent, subsidiaries, predecessors and affiliates . . .").  The court noted, however, that there may be other reasonable interpretations, and any uncertainty was to be construed against The Peppermint Club as the drafter of the agreement.

Hwood timely appealed.

## DISCUSSION

On appeal, Hwood contends that the trial court erred in denying its motion to compel arbitration.  Hwood argues that Sorenson's claims are covered by the Arbitration Agreement because they related to her employment with Harriet's Rooftop, which is an affiliate of The Peppermint Club.  Hwood further asserts that, because it is the parent company of both The Peppermint Club and Harriet's Rooftop, it may enforce the agreement as a nonsignatory under a third party beneficiary or alter ego theory.  We conclude the trial court properly denied Hwood's motion to compel arbitration.

### I.    Governing law

" 'A party to an arbitration agreement may petition the court to compel other parties to arbitrate a dispute that is covered by their agreement.' " (*Cohen v. TNP 2008 Participating Notes Program, LLC* (2019) 31 Cal.App.5th 840, 858.)  "Although there is general policy favoring arbitration, a party cannot be compelled to accept arbitration of a controversy which they have not agreed to arbitrate." (*Garcia v. Expert Staffing West* (2021) 73 Cal.App.5th 408, 413 (*Garcia*).)  "Whether an agreement to arbitrate exists is a threshold issue of contract formation and state contract law." (*Avila v. Southern California Specialty Care, Inc.* (2018) 20 Cal.App.5th 835, 843.)  "The party seeking to

6

compel arbitration bears the burden of proving the existence of a valid arbitration agreement." (*Id*. at p. 844.)

" 'Because arbitration is a matter of contract, generally " 'one must be a party to an arbitration agreement to be bound by it or invoke it.' " ' [Citation.] 'However, both California and federal courts have recognized limited exceptions to this rule, allowing nonsignatories to an agreement containing an arbitration clause to compel arbitration of, or be compelled to arbitrate, a dispute arising within the scope of that agreement.' " (*People v. Maplebear Inc.* (2022) 81 Cal.App.5th 923, 931.) In general, " ' " ' "there are six theories by which a nonsignatory may be bound to arbitrate: '(a) incorporation by reference; (b) assumption; (c) agency; (d) veil-piercing or alter ego; (e) estoppel; and (f) third[]party beneficiary.' " ' " ' " (*Pacific Fertility Cases* (2022) 85 Cal.App.5th 887, 893.)

In deciding whether the parties agreed to arbitrate a certain dispute, " 'courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.' " (*Fleming v. Oliphant Financial, LLC* (2023) 88 Cal.App.5th 13, 21.) " 'General contract law principles include that "[t]he basic goal of contract interpretation is to give effect to the parties' mutual intent at the time of contracting. [Citations.] . . . 'The words of a contract are to be understood in their ordinary and popular sense.' [Citations.]" [Citation.] Furthermore, "[t]he whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other." ' " (*Garcia, supra*, 73 Cal.App.5th at pp. 413–414.) Moreover, where the drafter of the contract "has prepared an arbitration provision whose application to a particular dispute is uncertain, ordinary contract principles

require that the provision be construed against the drafter's interpretation and in favor of the nondrafter's interpretation." (*Sandquist v. Lebo Automotive*, Inc. (2016) 1 Cal.5th 233, 248 [when an arbitration agreement has been prepared entirely by the employer, any ambiguities must be construed against the employer and in favor of the employee]; but see *Lamps Plus, Inc. v. Varela* (2019) 587 U.S. ___ [139 S.Ct. 1407, 1415] [ambiguous agreement cannot provide necessary contractual basis for compelling *class* arbitration under Federal Arbitration Act].)

"On appeal from an order denying a petition to compel arbitration, we review the trial court's factual determinations under the substantial evidence standard, and we review the legal issues independently." (*Jarboe v. Hanlees Auto Group* (2020) 53 Cal.App.5th 539, 547 (*Jarboe*).) We independently determine whether a written document is an enforceable arbitration agreement " 'when the parties do not offer conflicting extrinsic evidence regarding the document's meaning.' " (*Garcia*, *supra*, 73 Cal.App.5th at p. 413.) We also "independently consider the question of whether and to what extent a nonsignatory may enforce an arbitration agreement." (*Jarboe*, at p. 547; see *Hernandez v. Meridian Managment Services, LLC* (2023) 87 Cal.App.5th 1214, 1219.)

## II.    The trial court did not err in denying Hwood's motion to compel arbitration

Applying the well-established principles of contract interpretation, we conclude Sorenson's agreement to arbitrate any disputes with her prior employer, The Peppermint Club, does not to extend to claims arising out of or related to her subsequent employment with Harriet's Rooftop. The trial court therefore properly denied Hwood's motion to compel arbitration.

8

We begin with the language of the contract. The first sentence of the Arbitration Agreement provides that Sorenson was entering into the agreement "[a]s a condition of and in consideration for [her] employment and/or continued employment with . . . The Peppermint Club." It then states that Sorenson "agree[s] that disputes relating to [her] employment, or the termination of such employment, The Peppermint Club and its owners, officers, current or former employees, agents, parent, subsidiaries, predecessors and affiliates, successors or assigns (hereinafter 'the Company') shall be decided . . . in final and binding individual arbitration." In defining when arbitration is required, the next paragraph provides that "[a]ny dispute, claim or controversy . . . arising out of or relating to Employee's employment or the cessation of such employment with the Company, shall be submitted to final and binding arbitration." The only signatories to the Arbitration Agreement are Sorenson and The Peppermint Club. Neither Hwood nor Harriet's Rooftop is a signatory, and neither entity is expressly named anywhere in the agreement.

We interpret this language according to general legal principles, as arbitration-specific rules are not allowed. (*Viking River Cruises, Inc. v. Moriana* (2022) ___ U.S. ___ [142 S.Ct. 1906, 1917–1918].) The generally applicable interpretative rule that governs here is the prefatory-materials canon: a preamble is a permissible indicator of meaning. (See Scalia & Garner, Reading Law: The Interpretation of Legal Texts (2012) p. 217; see also *Newby v. Anderson* (1950) 36 Cal.2d 463, 470 [recognizing "the 'intention' expressed in the preamble" of a contract must be given import in interpreting its meaning].)

The preamble here is "As a condition of and in consideration for my employment and/or continued employment with West Beverly Group, LLC, dba The Peppermint Club . . . ." This preamble has particular significance. It alerts readers to the scope of this contract. That scope pertains to Sorenson's employment with "West Beverly Group, LLC, dba The Peppermint Club." The contract governed that employment. When that employment ended, the contract lapsed. The plain English interpretation of this contractual text thus shows the contract began and ended with the beginning and end of Sorenson's job at The Peppermint Club. The contract was not in effect when Sorenson started at Harriet's Rooftop.

Moreover, considering the Arbitration Agreement as a whole, the plain language reflects that Sorenson entered into the agreement as a condition of her employment with The Peppermint Club, and that she agreed to arbitrate any claims against The Peppermint Club and its owners, officers, parent, subsidiaries, affiliates, etc., that arise out of or relate to her employment, or the termination of such employment, with The Peppermint Club. In this case, however, none of Sorenson's claims against Hwood and the unnamed Doe defendants arise out of or relate to her prior employment with The Peppermint Club. Rather, each cause of action in Sorenson's complaint is based solely on her subsequent employment with a different company, Harriet's Rooftop.

It is undisputed that Sorenson's employment with The Peppermint Club ended before she began working for Harriet's Rooftop. It is also undisputed that The Peppermint Club is not named as a party in the action, and that none of the allegations in Sorenson's complaint are in any way related to her prior work

10

for The Peppermint Club. In fact, the complaint does not mention The Peppermint Club at all. Instead, the complaint alleges that, after Sorenson was hired to work as a server at Harriet's Rooftop, Hwood and the unnamed Doe defendants unlawfully retaliated against her for complaints that she made about illegal practices committed by Harriet's Rooftop during her employment there. Sorenson's claims are therefore based solely on alleged unlawful conduct that occurred after the cessation of her employment with The Peppermint Club and during the time that she was employed by Harriet's Rooftop, which is a separate corporate entity. Because Sorenson's agreement to arbitrate is expressly limited to claims that arise out of or relate to her employment relationship with The Peppermint Club, each cause of action alleged against Hwood falls outside the scope of the Arbitration Agreement. (See *Garcia*, *supra*, 73 Cal.App.5th at pp. 413–414; *Jarboe*, *supra*, 53 Cal.App.5th at pp. 549–550.)

*Garcia*, *supra*, 73 Cal.App.5th 408, is instructive. In that case, the plaintiff previously worked for two companies, Essential Seasons, LLC, and Cool-Pak, LLC. (*Id*. at p. 410.) During the plaintiff's employment, a third company, Expert Staffing West, provided payroll services to Essential Seasons. (*Id*. at p. 411.) After that employment ended, the plaintiff applied for work with Expert Staffing West. (*Ibid*.) The employment application included an agreement to arbitrate " 'any dispute between Employee and the Company relating to or arising out of employment,' " and expressly defined " 'the Company' " as " 'Expert Staffing West *and all related entities*.' " (*Id*. at p. 411.) The plaintiff later sued all three companies for wage and hour violations arising from her employment with Essential Seasons and Cool-Pak, and the defendants moved to compel arbitration of

11

the claims.  (*Id*. at p. 412.)  In affirming the order denying the motion to compel arbitration, the Court of Appeal concluded the plaintiff's arbitration agreement with Expert Staffing West did not apply to claims based on her prior employment with Essential Seasons and Cool-Pak, despite the business relationship that existed between the companies.  (*Id*. at p. 414.)  As the court explained, the plaintiff's "claims arose when she was employed by a different company (i.e., Essential Seasons/Cool-Pak) before she applied for a job with Expert Staffing West.  No evidence supports a finding that the parties intended to benefit [the plaintiff's] former employers, or that those former employers are prejudiced by not being able to enforce an arbitration agreement they never bargained for or executed."  (*Ibid*.)

Here, Sorenson's claims arose when she was employed by a different company, Harriet's Rooftop, *after* her employment with The Peppermint Club ended.  Hwood did not offer any evidence to support a finding that, when Sorenson and The Peppermint Club entered into the Arbitration Agreement, they intended to benefit prospective employers that might hire Sorenson at some point in the future.  Further, Hwood has not shown how any such future employers would be "prejudiced by not being able to enforce an arbitration agreement they never bargained for or executed." (*Garcia*, *supra*, 73 Cal.App.5th at p. 414.)  If Hwood intended for Sorenson to arbitrate any claims arising out of her subsequent employment with Harriet's Rooftop, then it could have required her to sign an agreement to that effect when she was hired by Harriet's Rooftop.  It did not do so.

In arguing that Sorenson's claims against it are subject to arbitration, Hwood asserts that the word "with" is missing from the first sentence of the Arbitration Agreement, which should

instead read: "I . . . *waive my right to a jury trial* and agree that disputes relating to my employment, or the termination of such employment, *with* The Peppermint Club and its owners, officers, current or former employees, agents, parent, subsidiaries, predecessors and affiliates, successors or assigns (hereinafter 'the Company') shall be decided . . . in final and binding individual arbitration." Hwood contends that, once the word "with" is added to this sentence, it is clear the agreement applies to any claims that are related to Sorenson's employment "with" The Peppermint Club as well as any other persons and entities that are included within the definition of "the Company."

As the trial court observed, however, any ambiguities concerning the scope of the Arbitration Agreement must be construed against the employer as the drafter of the agreement and in favor of the nondrafter employee. (See *Sandquist v. Lebo Automotive, Inc.*, *supra*, 1 Cal.5th at p. 248.) Moreover, even if we read the first sentence to include the word "with" between "employment" and "The Peppermint Club," we do not interpret Sorenson's agreement to arbitrate as extending to claims solely related to her subsequent employment with Harriet's Rooftop. Hwood would have us construe the Arbitration Agreement as applying to any future employment that Sorenson might have with any company that is affiliated with The Peppermint Club, because the term "affiliate" is included in the agreement's definition of "the Company." Yet such an expansive reading would mean that, at the time Sorenson and The Peppermint Club entered into the agreement, it was their mutual intent that, even after their employment relationship ended, they would continue to preserve one condition of that prior relationship by requiring Sorenson to arbitrate disputes with any affiliated company that

13

might employ her in the future. Under this reading, Sorenson would be required to arbitrate any claims that she might have against future affiliated employers in perpetuity, even where such claims have nothing to do with her prior employment with The Peppermint Club. We conclude the plain language of the Arbitration Agreement is not susceptible of the interpretation proposed by Hwood.

Citing *Ronay Family Limited Partnership v. Tweed* (2013) 216 Cal.App.4th 830 (*Ronay*), Hwood argues that it is entitled to enforce the Arbitration Agreement as a third party beneficiary because it is The Peppermint Club's "parent," which is one of the entities listed in the agreement's definition of "the Company." To invoke the third party beneficiary exception, nonsignatories must show that the arbitration agreement was " 'made expressly for [their] benefit.' " (*Id*. at p. 838.) While "[i]t is 'not necessary that the beneficiary be named and identified as an individual' " in the contract, they must establish that they are " 'a member of a class of persons for whose benefit it was made.' " (*Id*. at pp. 838– 839.)

In *Ronay*, a financial advisor, acting as an agent and registered representative of a securities broker, opened an investment account for the plaintiff. (*Ronay*, *supra*, 216 Cal.App.4th at p. 834.) The account agreement between the plaintiff and the broker required arbitration of " 'any controversy arising out of or related to . . . the transactions with [the broker], its officers, directors, agents, registered representatives and/or employees.' " (*Id*. at p. 835.) In concluding the financial advisor could enforce the arbitration clause as a third party beneficiary, the Court of Appeal explained that "[b]y expressly requiring arbitration of claims against [the broker's] agents and registered

representatives, the arbitration clause was intended to benefit nonparties." (*Id*. at p. 839.)

In *Ronay*, however, the claims against the financial advisor arose out of and were related to the plaintiff's transactions with the broker and its agents and registered representatives. (*Ronay*, *supra*, 216 Cal.App.4th at p. 835.) The gravamen of the plaintiff's complaint was that the financial advisor misled him about the risks of certain investments with the broker and induced him to make unacceptably risky investments, which ultimately failed. (*Ibid*.) The subject matter of the plaintiff's claims against the third party beneficiary thus fell within the express scope of the arbitration clause. Here, in contrast, any standing that Hwood might have to enforce the Arbitration Agreement as a third party beneficiary would be limited to claims arising out of or related to Sorenson's employment with The Peppermint Club. (See *Jarboe*, *supra*, 53 Cal.App.5th at p. 550 [where employment agreement required arbitration of claims against a named company and " 'its owners, directors, officers,' " etc., the individual owners' standing to compel arbitration of claims alleged against them was "in the limited context of their ownership" of the company named in the agreement].) Yet as discussed, none of Sorenson's claims against Hwood are in any way related to her prior employment with The Peppermint Club. Because Sorenson's claims are not covered by the Arbitration Agreement, Hwood cannot compel arbitration of those claims as a third party beneficiary of the agreement.

Hwood also asserts that it may enforce the Arbitration Agreement under an alter ego theory because Sorenson alleged in her complaint that each defendant was "the agent, servant, employee, representative and/or alter ego" of the other defendants. Hwood argues that nonsignatories to an arbitration

15

agreement are entitled to compel arbitration if sued as the signatory's alter ego.  Sorenson's complaint, however, alleges that Hwood was acting as the alter ego of unnamed Doe defendants, not The Peppermint Club, and her claims do not fall within the scope of her agreement to arbitrate disputes related to her employment with The Peppermint Club.  In any event, courts have recognized that the boilerplate allegations in a complaint regarding agency, alter ego, or joint employer relationships do not constitute judicial admissions, and accordingly, are not sufficient to allow nonsignatories to enforce an arbitration agreement.  (See *Garcia, supra*, 73 Cal.App.5th at pp. 415–416; *Jarboe, supra*, 53 Cal.App.5th at p. 554; *Barsegian v. Kessler & Kessler* (2013) 215 Cal.App.4th 446, 452–453.)  On this record, the trial court did not err in denying Hwood's motion to compel arbitration.

## DISPOSITION

The order denying the motion to compel arbitration is affirmed.  Sorenson shall recover her costs on appeal.


VIRAMONTES, J.


WE CONCUR:



STRATTON, P. J.



WILEY, J.

16